[No. 10011.   Department One.   July 1, 1912.]

PHILIP ROHSNAGEL et al., Appellants, v. NORTHERN PACIFIC
RAILWAY COMPANY, Respondent.[1]

WATERS AND WATER COURSES—SURFACE WATERS—DIVERSION—LIA-
BILITY—RAILROAD EMBANKMENT.   A railroad company is liable for
flooding lands, where by its embankment, it raised and collected the
periodical floods of a river and discharged the same through a
culvert in an unusual volume and with excessive force upon plain-
tiff's lands, which it thereby washed away and injured; the prin-
ciple that surface water is an outlaw and common enemy not
warranting the collection of surface water in a considerable quan-
tity to be turned in concentrated form through a ditch or culvert
upon the premises of another.

Appeal from a judgment of the superior court for Sno-
homish county, Bell, J., entered November 1, 1911, upon sus-
taining a demurrer to the complaint, dismissing an action for
damages to property.   Reversed.

Hathaway & Alston, for appellants.

Geo. T. Reid, J. W. Quick, and L. B. da Ponte, for re-
spondent.

CROW, J.—Action by Philip Rohsnagel and Fredericka
Rohsnagel, his wife, against Northern Pacific Railway Com-
pany, a corporation, to recover damages.   A demurrer to
the second amended complaint was sustained, the action was
dismissed, and the plaintiffs have appealed.

The only question is whether the second amended com-
plaint, hereinafter called the complaint, states a cause of
action.   The following plat, marked Exhibit "A," is attached
to and made a part of the complaint:

[1]Reported in 124 Pac. 900.

The material allegations of the complaint are:

"(3)    That, at all times herein mentioned, the plaintiffs have been and now are the owners in fee simple and in possession of the north one-half of the southeast quarter of the northeast quarter of section twenty-five, twp. twenty-eight north, range five, east, W. M., in Snohomish county, Washington.

"(4)    That the main or ordinary channel of the Snohomish river runs about sixty rods easterly of the east side

of the property of the plaintiffs, hereinbefore described, and that the property hereinbefore described, and all of the land lying between that and the Snohomish river is in what is known as the Big Marsh, and for more than fifty years last past has been and now is subject to overflow annually, by said Snohomish river, during ordinary freshets, and that such overflow has during all of said time done no damage to said property, but, on the contrary, has deposited quantities of alluvium, which has been and now is of great benefit to the plaintiffs' said land.

"(5)    That at all times herein mentioned, the said defendant has owned and does now own a right-of-way through sections 30 and 31, twp. 28 north, of range 6, east W. M.; and sections 24 and 25, twp. 28 north, of range 5 east W. M., in Snohomish county, Washington; that for about two miles southerly of plaintiffs' land hereinbefore described, and a mile and a half northerly thereof, the said right of way of said railway company runs substantially parallel with the westerly side of said Snohomish river, and about sixty rods westerly of the main channel of said river, and immediately easterly of the plaintiffs' land above described; that annexed hereto, marked "Exhibit A," and made a part of this complaint is a plat showing the plaintiffs' said land, the river and the right of way of the railroad company as it passes over and along that part of the territory in the immediate vicinity of the plaintiffs' said land.

"(6)    That from time immemorial, during the ordinary freshets of said Snohomish river, the river extended and extends in a solid body of water, flowing in the direction of the natural flow of said river, from about a quarter of a mile westerly of the plaintiffs' said land to some distance easterly of the main channel of said river.

"(7)    That about fifteen years ago the defendant elevated its said roadbed from four to eight feet above the natural level of said land, and filled solidly under its tracks, forming an embankment or dike, which caused the water from the river, in ordinary floods of said river, to rise from two to three feet higher on the easterly side of said railway than it would on the westerly side thereof.

"(8)    That during the month of November, 1906, the said embankment washed out for a distance of about eighty or one hundred feet immediately opposite to the plaintiffs' said land and immediately opposite the buildings located

thereon, as hereinafter described; that thereafter and in the same year or during the spring of 1907, the defendant placed a culvert under said track about fifty (50) feet in width immediately opposite to the buildings of the plaintiffs, as hereinafter described, which culvert it has maintained at all times thereafter; that during ordinary floods the water rises as above stated higher on the easterly side than it does on the westerly side of the right of way, caused by said embankment, which causes a great current of water to rush through said culvert on to the plaintiffs' land and much more water than would go upon plaintiffs' said land if the river were permitted to flow in its natural course.

"(9) That prior to the wash-out hereinbefore complained of, the plaintiffs had built a dwelling house at the point marked "B" on said plat, a barn and outhouses at the point marked "C" on said plat at a cost of three thousand ($3,000) dollars, and have made other improvements on said land of the value of one thousand ($1,000) dollars, and that said land was worth before it was damaged as hereinafter alleged, including the buildings, seven thousand ($7,000) dollars.

"(10) That there is no natural watercourse in an easterly direction or in any other direction, except from said Snohomish river, during freshets therein, at the point where said culvert is located, and that the defendant owns the land under and along the culvert and that there is no railway or other crossing at or near said culvert, and that the culvert is wholly unnecessary for the purpose of permitting the surface water to drain from the defendant's said land or from the plaintiffs' land, and that said culvert is wholly unnecessary for the purpose of preventing the surface water from going upon the plaintiffs' land or from going upon the defendant's said right of way or the defendant's land, and that it is wholly unnecessary for the purpose of protecting the defendant's land or right of way or roadbed, or the public against the floods of said river.

"(11) That during the freshet, high water or flood of the fall of 1908, and each succeeding annual flood thereafter, the roadbed of said defendant, elevated as aforesaid, has caused the water to rise about three feet higher on the easterly side thereof than it was on the westerly side, and has caused the water to accumulate upon its right of way and on the easterly side thereof, and to be forced through said culvert or ditch so constructed by the said railway com-

pany with great force, and that in so doing the said water has washed a great hole or gully on the plaintiffs' said premises at the point marked "D" on the plat annexed hereto; that the said hole so washed is from forty to seventy feet in width, and from four to eight feet in depth, and about two hundred fifty feet in length, and extends up to within twenty-five feet of the dwelling house of said plaintiffs, constructed as aforesaid, and within thirty feet of the barn of said plaintiffs, constructed as aforesaid, and that it is filled with water; that the water remains in it during the entire year and becomes stagnant during the summer months and thereby creates disease germs and jeopardizes the health of the plaintiffs and their family."

The complaint further alleges that plaintiffs have been damaged in the total sum of $6,000.

Respondent, in support of the order sustaining the demurrer, contends that the facts alleged are substantially identical with those pleaded in *Harvey v. Northern Pac. R. Co.*, 63 Wash. 669, 116 Pac. 464; that surface water is an outlaw and a common enemy against which respondent may protect itself and that, under the doctrine of the *Harvey* case, any damages appellants may have sustained are *damnum absque injuria*. Appellants admit that surface water is an outlaw and common enemy against which a property owner may properly protect himself; but insist that neither the doctrine of the *Harvey* case, nor of any other case, will protect respondent from liability for the damages that have resulted to their land by reason of respondent's acts in controlling the water in the manner alleged in the complaint. A comparison of the complaint and plat in this action with those in the *Harvey* case will disclose a material variance. Here the respondent constructed a culvert through its embankment in such a manner and at such a point as to discharge surface water through the culvert upon appellant's land to their injury. No similar act was pleaded in the *Harvey* case. The only reasonable inference from the allegations of the complaint in this action is that the culvert was constructed through the embankment for the express purpose of discharg-

ing the water towards and upon appellants' land.   In the *Harvey* case we said:

"Respondent does not contend it can collect water on its right of way by a ditch or other means, and discharge it on appellant's premises; nor does it contend it may lawfully create an artificial pool or collection of water upon its premises and precipitate the same upon the land of another.   It has not collected the water upon its land and discharged the same in a large volume or by a rapid current upon appellant's land. It has raised its own premises so as to dike against and prevent the flow of surface water thereon.   It has protected itself and prevented the invasion of its premises by the flood water of the stream.   If thereby the water, which we hold to be surface water, is turned back and prevented from flowing over its land to appellant's injury, the case is one of *damnum absque injuria*.   The surface water now meets the embankment and proceeds with the natural course of the stream.   In other words, it is temporarily returned to the stream, and all the respondent has done is simply to protect its property from the overflow water which would otherwise leave the natural channel of the stream."

In this action, the surface water does not meet the embankment and then proceed with the natural course of the stream, but respondent has collected the water on its right of way and has discharged it upon appellants' land through a culvert constructed for that purpose.   It has not raised its own premises for the sole purpose of diking against and preventing the flow of surface water thereon, but has also created a new, unnatural, and destructive current through its embankment, to appellants' damage.   In the *Harvey* case, we observed that, as a result of the embankment there constructed, the surface water was returned to the stream; that all the defendant did was to protect its property from overflow water which would otherwise leave the natural channel of the stream.   To construct the embankment and thereby raise the water to an unnatural height on respondent's right of way, and then force it through the culvert upon appellants' land with destructive force and in a larger volume than

its natural flow, is not a protection of respondent's right of way from surface water, as held in the *Harvey* case; but is an attempt to control and dispose of the water in a manner to suit the respondent's pleasure and convenience without returning it to the stream and without regard to appellants' rights. A property owner cannot gather surface water on his land, discharge it in an unusual volume and with excessive force through an artificial ditch or culvert upon the land of another, and then be relieved from liability on the theory that the injury resulting to his neighbor is *damnum absque injuria*. Gould, Waters (3d ed.), 271; *Peters v. Lewis*, 28 Wash. 366, 68 Pac. 869; *Livingston v. McDonald*, 21 Iowa 160, 89 Am. Dec. 563.

"No one has a right to collect surface water in any considerable quantity upon his own premises, and then turn the same in a concentrated form upon the premises of his neighbor in such a manner as to cause him damage. Not that an owner of land may not so change the grade or surface thereof as to cause surface water to flow in a different direction from what it did before the natural contour thereof was changed, for this such owner doubtless may lawfully do, but he may not collect and concentrate such water by means of drains or otherwise, and then turn it upon his neighbor's land in a volume." *Johnson v. White*, 26 R. I. 207, 58 Atl. 658, 65 L. R. A. 250.

"It is held both in the jurisdictions which adopt the civil-law rule and in those following the common-law rule that the owner of land which surface water has reached has no right to collect it into a ditch, culvert, or other artificial channel and discharge it upon the land of another in quantity or volume exceeding what would have reached the latter land by natural drainage." 30 Am. & Eng. Ency. Law (2d ed.), 335, and cases cited in note 7.

In *Wood v. Tacoma*, 66 Wash. 266, 119 Pac. 859, we recognized the doctrine of the *Harvey* case, to the effect that surface water is to be regarded as an outlaw and common enemy against which every landed proprietor may protect himself without liability for injuries resulting to others; but

we also recognized the exception to the general rule substantially as above stated.   The allegations of the complaint show that respondent has, in effect, gathered the surface water and discharged it through an artificial culvert on the appellants' land, with destructive force and in a concentrated volume, to their injury.   This it cannot do without incurring liability for resulting damages.

The judgment is reversed, and the cause is remanded with instructions to overrule the demurrer.

PARKER, GOSE, and CHADWICK, JJ., concur.