[No. 886-3. Division Three. October 29, 1974.]

NORTHERN PACIFIC RAILWAY COMPANY, *Appellant*, v. SUNNYSIDE VALLEY IRRIGATION DISTRICT, *Respondent*.

*Roger J. Crosby* and *Delbert W. Johnson*, for appellant.

*Michael W. Leavitt* and *Robert R. Redman* (of *Gavin, Robinson, Kendrick, Redman & Mays*), for respondent.

GREEN, C.J.—Plaintiff, Northern Pacific Railway Company, brought this action against the defendant, Sunnyside Valley Irrigation District, to recover damages caused by the escape of water from defendant's irrigation canal. Trial to the court upon stipulated facts resulted in a judgment in favor of the defendant. Plaintiff appeals.

Two errors are addressed to the court's findings and conclusions: (1) the failure to allow a recovery under the indemnity provisions of a 1913 permit; and (2) the failure to find and hold that the damage to plaintiff's property was the result of a constitutional taking or damaging.

On June 30, 1969, from causes unknown, a break occurred in the bank of one of defendant's canals and waters contained therein flowed through the break into a drainage ditch maintained by the defendant. This water followed the drainage ditch to a culvert under plaintiff's railroad tracks. Because the amount of water was excessive, the culvert was not large enough to handle it and as a result a portion of plaintiff's roadbed was washed away to plaintiff's damage in the amount of $6,432.57. No claim was filed by plaintiff with the defendant pursuant to RCW 4.96.020 or RCW 87.03.440 because plaintiff's theory of recovery is not based upon tort.

First, plaintiff contends that it is entitled to recover under the indemnity provisions of a 1913 permit given by the plaintiff to Yakima County for the construction of the culvert in question. This permit provides, in part:

This permission is granted upon the following terms:

. . .

(3) The second party [Yakima County] agrees that the improvements shall not at any time damage the railroad or structures of the Company, or be a menace to the safety of its operations; *and to indemnify and save harmless the Company from all loss and damage* to its tracks, roadbed, structures, rolling stock and other property, and from injuries to persons, *occasioned by the improvements.*

(Italics ours.) The foregoing indemnity provision constitutes the sole consideration for the permit.

█ Initially we hold that the defendant irrigation district assumed the indemnity provision contained in the permit. While there is no express assumption of the underlying agreement, a consideration of all the facts compels the inference that the defendant assumed the conditions of the permit. *McGill v. Baker,* 147 Wash. 394, 266 P. 138 (1928). On April 20, 1961, the defendant agreed[1] to take over and not only maintain but operate the drainage system without cost to Yakima County, Drainage District No. 9 or the United States. Inherent in this undertaking is an implied assignment to the defendant of Yakima County's permit to use the culvert. In *Central of Georgia Ry. v. Woolfolk Chem. Works, Ltd.,* 122 Ga. App. 789, 178 S.E.2d 710 (1970), the railroad brought suit on the indemnity agreements contained in the contracts with a dissolved corporation, the predecessor of the defendant partnership. The defendant argued that it had not assumed any of the duties of the dissolved corporation and that it was not an assignee under the contracts containing the indemnity agreements. In answer, the court stated:

> A third person may, of course, assume the obligation expressly in writing, or he may do so by implication where his conduct manifests an intent to become bound. . . . In the latter event all the circumstances must be considered, such as the subject matter of the contract, the third person's acts and words, whether he acquiesced in the terms of the contract, performed its obligations, or accepted its benefits.

---

[1]Paragraph 8 of the contract between the defendant, Yakima County, and the United States, Department of Interior, Bureau of Reclamation (Exhibit No. 2, Stipulation of Fact) provides in part:

"The Sunnyside Valley Irrigation District shall perform all necessary *operation and maintenance* work during the period when the betterment and rehabilitation of the drains is under way, and upon completion of such betterment and rehabilitation work, the Sunnyside Valley Irrigation District shall *operate and maintain* the drains in such condition as to provide at all times the designed capacity of such drain for seepage, waste and run-off waters from lands within Drainage

*Central of Georgia Ry. v. Woolfolk Chem. Works, Ltd.,* *supra* at 792. Here, the defendant's beneficial use of the culvert is so entwined with the indemnity provision that as to plaintiff, defendant cannot be heard to deny that it assumed the obligation. *Rose v. Vulcan Materials Co.*, 282 N.C. 643, 194 S.E.2d 521 (1973); *cf.* Restatement of Contracts § 164 (1932); 3 S. Williston, *Contracts* § 418A (3rd ed. 1960); 4 A. Corbin, *Contracts* § 906 (1951). Indeed, as to plaintiff, it is estopped to deny it. It is agreed that the culvert in question was a part of the drainage system. Defendant's express assumption of the duty to operate and maintain the drainage system is inseparable from the agreement to hold the plaintiff harmless from any loss or damage occasioned by the use of that system.

We now turn to the error assigned to finding of fact No. 3:

> By the terms of the indemnity agreement in the 1913 Permit, the parties to that agreement were bargaining with respect to damage or injury caused by the improvement; namely, the construction, maintenance and operation of the culvert under the railroad tracks. The parties did not intend to include damage caused by a break in a nearby irrigation canal.

and conclusion of law No. 2:

> The parties to the 1913 Indemnity Agreement were not bargaining with respect to matters outside of the culvert under the railroad tracks. Therefore, defendant is not liable to plaintiff on the basis of the indemnity provision contained in the 1913 Permit.

This finding and conclusion is explained in the trial court's memorandum opinion:

> It appears to the court that the indemnity language in the 1913 Permit is clear and unambiguous. The agreement relates to risks incident to construction, operation and maintenance of the pipelines under the railroad's
>
> District No. 9, including waters that shall flow thereon from lands lying at a higher elevation. *All of such operation and maintenance shall be performed without cost to the County, Drainage District No. 9, or the United States.*" (Italics ours.)

right of way. Under the wording used it would be unreasonable to conclude that the parties intended to include damage caused by a break in a nearby irrigation canal. In the present case, the water pipes under the railroad tracks did not damage plaintiff's right of way; the damage was caused by the sudden and large amount of water originating from the break in defendant's irrigation canal. The court finds that defendant is not liable to plaintiff under the indemnity theory.

We disagree with the trial judge's interpretation.

In construing indemnity provisions, the court in *Continental Cas. Co. v. Municipality of Metropolitan Seattle,* 66 Wn.2d 831, 835, 405 P.2d 581 (1965), noted:

> In *Union Pac. R.R. Co., supra* [64 Wn.2d 486, 392 P.2d 450 (1964)], we approved the rule that:
> ". . . Contracts of indemnity, therefore, must receive a reasonable construction so as to carry out, rather than defeat, the purpose for which they were executed. To this end they should neither, on the one hand, be so narrowly or technically interpreted as to frustrate their obvious design, nor, on the other hand, so loosely or inartificially as to relieve the obligor from a liability within the scope or spirit of their terms."

The indemnity provision in the instant case should be construed in the light of this rule.

Here, the permit provided that the plaintiff would be held harmless and indemnified against "*all* loss and damage . . . occasioned by the improvements." (Italics ours.) The trial court apparently reasoned that the only loss for which the plaintiff could make a recovery under this provision was for damage caused by the improvement itself. This construction is too limited. It bears repeating that the sole consideration passing to the plaintiff for the permit was the indemnity provision. The parties must have intended that the use of the culvert be conditioned upon the continued effectiveness of the indemnity provision. Otherwise, plaintiff would have no contractual protection against loss occasioned by the use. Under the circumstances, we believe the original parties contemplated the broadest construction

should be given the terms of the indemnity provision; and the defendants are bound thereby. *Gregers v. Peterson Ice Cream Co.*, 158 Cal. App. 2d 746, 323 P.2d 572 (1958). Furthermore, the parties agree that the loss was occasioned by defendant's water that escaped through a break in defendant's irrigation canal and found its way to the culvert through the drainage system operated and maintained by defendant.

It is clear to us that the purpose of the indemnity provision was to protect the plaintiff from *all* loss occasioned by the *use* of the improvement, *i.e.*, the culvert. This does not mean that the loss must be occasioned from normal use. Rather, *any* use of the culvert that results in damage or loss to the plaintiff is covered by the indemnity agreement. To otherwise construe the provision would frustrate its purpose, namely, to hold plaintiff harmless from *all* loss or damage from the use of the culvert. *See Northern Pac. Ry. v. National Cylinder Gas Div. of Chemetron Corp.*, 2 Wn. App. 338, 467 P.2d 884 (1970); *Erickson Paving Co. v. Yardley Drilling Co.*, 7 Wn. App. 681, 502 P.2d 334 (1972); *Prociw v. Baugh Constr. Co.*, 9 Wn. App. 750, 515 P.2d 518 (1973). We agree with the trial court's observation that the language is clear and unambiguous, but disagree with the narrow interpretation placed upon it.

In view of this holding, we do not reach the question of whether a constitutional taking or damaging occurred.

Judgment reversed with directions to enter judgment for plaintiff in accordance with this opinion.

McINTURFF, J., concurs.

MUNSON, J. (dissenting)—Applying the same rules for interpretation cited by the majority, I come to a different conclusion.

The plaintiff does not seek recovery from this defendant because it allowed water to escape the banks of its canal. Plaintiff institutes this action alleging indemnity provisions of a 1913 permit entitle them to recover, or in the alterna-

tive, that they were damaged by an uncompensated constitutional taking or damaging.

In 1913 Yakima County, on behalf of a local drainage district, obtained from the railroad a permit to place a drainage culvert beneath its existing tracks in several locations, one of which is involved in this action.[2] The permit provides the railroad may participate in the design, construction, operation and maintenance of the culvert and

---

[2]The pertinent portions of the permit state:

"1. The second party [Yakima County] will pay all taxes and assessments that may be levied or assessed against the improvements.

"2. The entire cost shall be borne by the second party; the division superintendent of the Company will decide what portion if any of the work will be done by the Company, and for such portion the second party will pay the Company the estimated cost before the work is done; if the actual cost exceeds the estimate, the second party will pay the additional amount when called upon; if the actual cost is less than the estimate, the Company will repay the surplus. All work hereunder by the second party shall be done in a first-class workmanlike manner to the satisfaction of the division superintendent of the Company, and in accordance with plans and specifications which he may prescribe or approve. The division superintendent of the Company shall have the right at any time when in his judgment it becomes necessary or advisable, to require any material used in the work to be replaced with the same or with material of a more permanent character; also to require additional work or changes of location as a matter of safety, or of appearance, or on account of additional tracks being laid, change of grade, or for any other reason connected with the operation of the railroad of the Company; all of which shall be done at the expense of the second party in the manner herein provided.

"3. The second party agrees that the improvements shall not at any time damage the railroad or structures of the Company, or be a menace to the safety of its operations; and to indemnify and save harmless the Company from all loss and damage to its tracks, roadbed, structures, rolling stock and other property, and from injuries to persons, occasioned by the improvements.

"4. This permit cannot be transferred or assigned by the second party without the written consent of the Company.

"5. If the second party shall at any time cease to maintain and operate the said water pipe lines, or shall fail faithfully to perform every agreement of this instrument, the Company may forthwith terminate this permit and may forthwith expel the second party from its premises; and at the end of the permit the second party will restore the premises of the Company to their former state."

have final approval over all such work, at no expense to the railroad.

In 1961, the United States of America, Yakima County, and the Sunnyside Valley Irrigation District executed an agreement, to which plaintiff was not a party, which states:

> 5. (a) The County conveys and quitclaims to the United States the right to use for the purposes herein stated.
>
> . . .
>
> (b) The rights herein granted include but are not limited by the following enumeration:
> (1) A permanent right to perform betterment and rehabilitation work . . .

Section 8 sets forth the agreement on behalf of the Sunnyside Valley Irrigation District:

> perform all necessary operation and *maintenance* work . . . operate and maintain the drains in such condition as to provide at all times the designed capacity of such drain for seepage, waste and run-off waters from the lands within Drainage Improvement District No. 9, including waters that shall flow thereon from lands lying at a higher elevation.

(Italics ours.) By entering into this agreement, the district did not obligate itself, under the indemnity provisions of the 1913 permit, for any damage suffered by the railroad not proximately caused by their operation or maintenance work. If the failure of the culvert to handle the volume of water had been attributable to faulty maintenance, such as allowing brush and debris to block the culvert, the defendant perhaps would be liable. However, no such allegation is made. The only basis for recovery is that the culvert was inadequate in size to handle the volume of water on June 30, 1969. Had this volume of water been caused by a flash flood, the railroad's position would be the same; but I would continue to contend that that is not the obligation which the defendant assumed. The volume of water on June 30, 1969, was not within the "designed capacity of such drain for seepage, waste and run-off waters . . ." as contemplated by the 1961 agreement.

Restatement of Contracts § 164 (1932)[3] creates a presumptive interpretation that an assignee is presumed to have promised to perform the obligations and duties of the promissor "in the absence of circumstances showing a contrary intention." The 1961 agreement, as between the signators, divides the rights, duties and obligations of Yakima County between the United States and this defendant. The United States was conveyed the county right to use the property and to perform betterment and rehabilitation work thereon. The defendant agreed only to perform maintenance and operation work. By so doing, defendant did not assume the entire obligatory provision of the permit, and in particular, the size and structure of the culvert itself in contemplation of the volume of water that appeared on June 30, 1969.

Thus, we differ on an interpretation of the defendant's obligations under the 1913 permit and the 1961 agreement. Cf. Chatham Pharmaceuticals, Inc. v. Angier Chem. Co., 347 Mass. 208, 196 N.E.2d 852 (1964); 4 A. Corbin, Contracts § 906 (1951); 3 S. Williston, Contracts § 418A (3d ed. W. Jaeger 1960).

I should further comment that plaintiff's second claim, namely that of uncompensated condemnation, is not well taken. This incident did not result in permanent or irreparable harm, but was a temporary injury which was repairable and of necessity was repaired. Temporary interference with a private property right, which is not continuous nor likely to be reoccurring, does not constitute condemnation

---

[3] "(1) Where a party to a bilateral contract which is at the time wholly or partially executory on both sides, purports to assign the whole contract, his action is interpreted, in the absence of circumstances showing a contrary intention, as an assignment of the assignor's rights under the contract and a delegation of the performance of the assignor's duties.

"(2) Acceptance by the assignee of such an assignment is intrepreted, in the absence of circumstances showing a contrary intention, as both an assent to become an assignee of the assignor's rights and as a promise to the assignor to assume the performance of the assignor's duties."

without compensation. *Cf. Colella v. King County,* 72 Wn.2d 386, 433 P.2d 154 (1967); *Boitano v. Snohomish County,* 11 Wn.2d 664, 120 P.2d 490 (1941); *Wong Kee Jun v. Seattle,* 143 Wash. 479, 255 P. 645, 52 A.L.R. 625 (1927).

I would affirm the judgment.

Petition for rehearing denied December 31, 1974.

Appealed to Supreme Court January 7, 1975.