[No. 43578.     En Banc.     October 9, 1975.]

NORTHERN PACIFIC RAILWAY COMPANY, *Respondent*, v. SUNNYSIDE VALLEY IRRIGATION DISTRICT, *Appellant*.

*Roger J. Crosby* and *Delbert W. Johnson,* for appellant.

*Michael W. Leavitt* and *Robert R. Redman* (of *Gavin, Robinson, Kendrick, Redman & Mays*), for respondent.

HAMILTON, J.—Defendant's irrigation canal broke, sending large quantities of water rushing through a drainage culvert under plaintiff's railroad tracks. The culvert was inadequate to handle the water, and plaintiff's railroad tracks were washed away. Plaintiff does not seek to recover on a tort theory, but rather on one or both of two other theories, *i.e.*, constitutional taking and/or indemnification.

The facts were stipulated. In 1913, plaintiff railroad gave a written permit to Yakima County for construction of a culvert under plaintiff's railroad tracks. The permit contained an indemnification agreement which read as follows:

> The second party [Yakima County] agrees that the improvements [water pipelines, or culverts] shall not at any time damage the railroad or structures of the Company, or be a menace to the safety of its operations; and to indemnify and save harmless the Company from all loss and damage to its tracks, roadbed, structures, rolling stock and other property, and from injuries to persons, occasioned by the improvements.

In 1961, defendant, by contract with Yakima County and the United States Department of the Interior, took over operation and maintenance of the drainage system of which the culvert was a part. Such operation and maintenance was to be performed without cost to Yakima County, the drainage district, or the United States.

In 1969, as a result of unknown causes, defendant's irrigation canal broke, resulting in the damages complained of. This action followed.

The trial court found for defendant on both issues. The Court of Appeals reversed, holding defendant bound by the indemnification agreement. The Court of Appeals did not reach the condemnation question. One judge dissented on

grounds that defendant was not liable for any damage to the railroad tracks which was not proximately caused by its operation and maintenance of the culvert. Defendant exercised its right of appeal pursuant to RCW 2.06.030 (e).

We first consider whether the indemnification agreement of the 1913 permit is effective to create liability on the part of defendant for the damage sustained. Such liability depends on a determination that the 1913 permit between plaintiff and Yakima County became binding on defendant by virtue of the 1961 agreement whereby defendant took over operation and maintenance of the drainage system, and also on a determination that the damage sustained was within the intended scope of the permit's hold-harmless provision.

The Court of Appeals was of the view that "[i]nherent in this undertaking [defendant's assumption of operation and maintenance of the drainage system] is an implied assignment to the defendant of Yakima County's permit to use the culvert." *Northern Pac. Ry. v. Sunnyside Valley Irrigation Dist.*, 11 Wn. App. 948, 950, 527 P.2d 693 (1974). The agreement signed by defendant in 1961 contains no language expressly assigning the obligations and authorizations of the 1913 permit to it. The Court of Appeals reasoned, however, that an implied assignment was inescapable, since without the permit defendant was without authorization to include the culvert as a part of the drainage system operation.

However, even if there did exist an implicit assignment, we disagree with the Court of Appeals' conclusion that the indemnity provision of the 1913 agreement encompasses the damage sustained here. Indemnity clauses are subject to fundamental rules of contractual construction, and are to be construed reasonably so as to carry out, rather than defeat, their purpose. Any ambiguity is to be resolved against the drafter—here, the plaintiff. *Jones v. Strom Constr. Co.*, 84 Wn.2d 518, 520, 527 P.2d 1115 (1974). The indemnity language of the 1913 permit refers to damage "occasioned by the improvements." It is apparent from the

permit .document that "improvements" refers to the water pipelines (culverts) authorized by the permit to be built under. plaintiff's tracks. The culvert was adequate for normal drain flows, *i.e.*, for carrying seepage, waste, and runoff waters from irrigation and rainfall. .It was not designed, expected, nor intended to function adequately in flood conditions .or other unusual situations involving large quantities of water such as caused the damage here. The washout of plaintiff's roadbed occurred independent of the culvert. The deluge resulted from a source only indirectly related to the culvert, and the washout of the roadbed was clearly not "occasioned" by the culvert. To extend this hold-harmless provision. so far would be unreasonable. The culvert itself did not fail to operate effectively as a culvert; it only failed to transform itself into a tunnel at the crucial moment.

Insofar as there is ambiguity in the 1913 permit, therefore, we must limit its scope to damage actually "occasioned by the improvements," that is, resulting from a cause directly related to the culvert.

We 'next consider the second argument advanced by plaintiff: whether the washout of the roadbed constitutes an uncompensated taking or damaging under article 1, section 16 of our state constitution.[1]

---

[1]"Private property shall not be taken for private use, except for private ways of necessity, and for drains, flumes, or ditches on or across the lands of others for agricultural, domestic, or sanitary purposes. No private property shall be taken or damaged for public or private use without just compensation having been first made, or paid into court for the owner, and no right-of-way shall be appropriated to the use of any corporation other than municipal until full compensation therefor be first made in money, or ascertained and paid into court for the owner, irrespective of any benefit from any improvement proposed by such 'corporation, which compensation shall be ascertained by a jury, unless a jury be waived, as in other civil cases in courts of record, in the manner prescribed by law. Whenever an attempt is made to .take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and determined as such, without regard to any legislative assertion that the use is public: *Provided*, that the taking of private property by the state for land reclamation and settlement purposes is hereby declared to be for public use." Const. art. 1, § 16 (amendment 9).

■ Plaintiff cites many cases holding that an invasion of private lands constitutes an unconstitutional taking. These cases, however, almost uniformly involve permanent or recurring damage inherent in some plan of work. The major decisions of this court considering the difficult distinction between a constitutional taking under article 1, section 16, and a mere tortious interference, are in agreement that a constitutional taking is a permanent (or recurring) invasion of private property. *Wong Kee Jun v. Seattle*, 143 Wash. 479, 255 P. 645, 52 A.L.R. 625 (1927); *Boitano v. Snohomish County*, 11 Wn.2d 664, 120 P.2d 490 (1941); *Olson v. King County*, 71 Wn.2d 279, 428 P.2d 562, 24 A.L.R.3d 950 (1967). As was pointed out by the dissenting judge below:

> Temporary interference with a private property right, which is not continuous nor likely to be reoccurring, does not constitute condemnation without compensation.

(Citations omitted.) *Northern Pac. Ry. v. Sunnyside Irrigation Dist., supra* at 956-57.

Damage is permanent if the property may not be restored to its original condition. *See Colella v. King County*, 72 Wn.2d 386, 433 P.2d 154 (1967). The damage to plaintiff's roadbed does not meet this requirement. According to the stipulated facts, the embankment was replaced and the tracks repaired. Accordingly, we find no constitutional taking here.

Plaintiff asserts that failure to proceed in tort does not necessarily result in denial of liability for a substantial invasion of private property. While this assertion is valid as an abstract proposition (*see Kuhr v. Seattle*, 15 Wn.2d 501, 131 P.2d 168 (1942)), plaintiff must still establish the elements of another theory, *e.g.*, nuisance or trespass. This plaintiff does not purport to do in this action.

The decision of the Court of Appeals is reversed, and the case is remanded to the trial court with instructions to reinstate its original judgment.

STAFFORD, C.J., and FINLEY, WRIGHT, BRACHTENBACH, and HOROWITZ, JJ., concur.

ROSELLINI, J. (dissenting)—As a result of the defendant's maintenance and operation of an irrigation and drainage system, both public uses, the plaintiff's land was damaged in the amount of $6,000. The cause of the break in the irrigation channel is not known, and thus the plaintiff cannot prove that the defendant was negligent. These facts are not disputed. Is the court then to turn the plaintiff away without a remedy, merely because the admitted facts do not precisely fit into some legal pigeonhole? Because the court does not conceive that the damages were "permanent"? Or because an indemnity agreement which would appear to be rather comprehensive in its terms did not expressly mention flooding? Or because the plaintiff has not used the magic words "nuisance"[2] or "trespass"? In attaching so much importance to niceties of theory, I fear the court has not paid sufficient attention to the question of justice between the parties. Observing the fastidious mood of the majority, I suspect some flaw would have been found in the plaintiff's case regardless of the doctrine upon which it relied.

In *Kuhr v. Seattle*, 15 Wn.2d 501, 131 P.2d 168 (1942), the plaintiff's property was damaged when earth from an unimproved city street slid upon it. The encroachment resulted from a fill being made on the street by persons other than the defendant city. The city claimed that it was not liable for the damage because it had not improved the street. This court found this defense to be without merit, and said that when a property owner's right to be free of encroachment is invaded, it is of little moment what the

---

[2]As for the theory of nuisance, the statute provides:
   Nothing which is done or maintained under the express authority of a statute, can be deemed a nuisance.
RCW 7.48.160.
   An activity which if not authorized by law would be a nuisance may constitute a compensable damaging under article 1, section 16 of the Washington Constitution. *Jacobs v. Seattle*, 93 Wash. 171, 160 P. 299 (1916).

theory of his cause of action may be. Whether it be brought on the theory of trespass, nuisance, negligence, or violation of rights guaranteed by article 1, section 16, of the constitution is not important; but if, under the facts and circumstances of the particular case, the theory of the cause of action is adapted to the relief sought, it is sufficient.

The majority today has abandoned this principle.

Const. art. 1, § 16 (amendment 9), provides:

No private property shall be taken or damaged for public . . . use without just compensation having been first made, . . .

The constitution contains no requirement that the damage be permanent. If that limitation upon the constitutional right to damage exists, it has been judicially imposed. I cannot perceive a rational basis for it. Certainly the majority opinion offers none. The plain meaning of the words used in the constitution is that, if a person's property is damaged for a public use, he shall be compensated, whether the damage is permanent or is temporary in nature.

Here the plaintiff's property took the overflow from a public drainage system and was thereby damaged. It was in effect used as a part of the system, albeit temporarily. To my mind that damage was compensable under article 1, section 16.

I do not find that the element of permanence has been consistently required in our cases. Following are some of the types of damage which have been said to be compensable under the constitutional provision:

Water released by the lowering of a lake collected upon plaintiff's land (*Wendel v. Spokane County*, 27 Wash. 121, 67 P. 576 (1902)); defendant constructed a culvert which directed water upon the plaintiff's land, causing erosion (*Rohsnagel v. Northern Pac. Ry.*, 69 Wash. 243, 124 P. 900 (1912)); construction of a highway caused slides which damaged a railroad embankment and tracks (*Great N. Ry. v. State*, 102 Wash. 348, 173 P. 40 (1918)); elimination of a

bend in a river caused flooding and erosion which damaged plaintiff's building (*Conger v. Pierce County*, 116 Wash. 27, 198 P. 377, 18 A.L.R. 393 (1921)); debris was cast upon adjacent property as a result of blasting for roadbuilding (*Spokane, P. & S. Ry. v. State*, 159 Wash. 529, 294 P. 231 (1930)); an inadequate culvert in a county road caused flooding of plaintiff's land (*Ulery v. Kitsap County*, 188 Wash. 519, 63 P.2d 352 (1936)); water diverted through a channel from a spring flooded plaintiff's land (*Boitano v. Snohomish County*, 11 Wn.2d 664, 120 P.2d 490 (1941)); roadside ditches overflowed onto plaintiff's land, causing damage to buildings and crops (*Harkoff v. Whatcom County*, 40 Wn.2d 147, 241 P.2d 932 (1952)); water was released onto plaintiff's land (*Colella v. King County*, 72 Wn.2d 386, 433 P.2d 154 (1967)).

It will be seen that the damage in a number of these cases was repairable and not of a continuing nature and therefore not permanent. In the last cited case it was expressly recognized that a constitutional damaging may be involved, even though the damage is not permanent.

It seems to me that, while this and other courts have used the word "permanent" in characterizing the type of damage which falls within the constitutional provision, they have nevertheless applied the provision where the damage was correctable. A more significant emphasis has been upon the distinction between damage which is caused solely by negligence on the part of the government body and damage which results from the construction, maintenance and operation of a public facility or installation.

Here, the flooding occurred without anyone's fault, insofar as the evidence shows. The water, flowing in the direction in which it was designed to flow in the drainage system, caused the damage to the plaintiff's property. The culverts were inadequate to contain the extraordinary flow of water. Whether that was the result of negligence is a matter which the plaintiff should not have to prove. He

need only show that the operation of the system for the public benefit caused damage to his land.[3]

In *Ulery v. Kitsap County, supra,* this court aptly said that any use of land for a public purpose which inflicts injury upon adjacent land, such as would have been actionable if done by a private owner, is a taking and damaging within the constitution. The damage here was of that nature.

A most relevant and coherent basis for determining whether a particular damage is one which is compensable under article 1, section 16, is that which is set forth in *Great N. Ry. v. State,* 102 Wash. 348, 173 P. 40 (1918), where this court said that if the state could have condemned the right to invade the plaintiff's property or to inflict the damage, the damage is compensable. Under the authority of RCW 87.03.140, the irrigation and drainage district could have condemned the right to use the plaintiff's land for overflow. The pertinent and rational test is met.

The indemnity agreement entered into by the defendant's predecessor was but an acknowledgment of a duty which would have existed independent of the agreement. It was the duty of the owner of the drainage system, a public corporation, to compensate the owner of adjacent property if, as a result of its maintenance and operation, that property suffered damage.

I would reverse the court below and order the entry of judgment in favor of the plaintiff.

HUNTER and UTTER, JJ., concur with ROSELLINI, J.

---

[3]*See* Comment, *Distinguishing Eminent Domain from Police Power and Tort,* 38 Wash. L. Rev. 607, 610 (1963).