FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2013 DEC -9 AM 9: 45



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| 10 NORTH WASHINGTON AVENUE, LLC, a Washington limited liability company, | No. 70397-8-I |
| | DIVISION ONE |
| Appellant, | |
| v. | |
| CITY OF RICHLAND, a municipal corporation, | UNPUBLISHED |
| Respondent. | FILED: December 9, 2013 |

Cox, J. — 10 North Washington Avenue, LLC (NWA) appeals the summary dismissal of its tortious interference and inverse condemnation claims against the City of Richland. Because NWA fails to establish that there are any genuine issues of material fact for trial, we affirm.

Randolph Peterson and his three sons own NWA. NWA owns property and provides administrative services to companies owned by the Peterson family. The Peterson family also owns a majority of Tri-City Railroad Company LLC (TCRY), which is not a party to this action. TCRY operates a short line railroad in Benton County.

In 2001, TCRY entered into a temporary service agreement with the City. This agreement permitted TCRY to operate on the Horn Rapids Spur, an industrial track. By its terms, the agreement could be "terminated upon ten (10) days written notice by either party." It also stated, by its terms, that the City and TCRY would "negotiate on a good faith basis to agree on an Industrial Track Agreement . . . to replace this [temporary service agreement]."

In 2008, NWA purchased 33 acres in the Horn Rapids Industrial Park for the purpose of building "transloading" and biofuel production facilities. "Transloading" means moving commodities between rail and truck. When NWA bought the property, it intended that TCRY would provide rail service to these future facilities.

NWA allegedly signed a letter of intent with Gen-X Energy Group in 2009. It appears that this letter provides for these two parties to jointly develop and construct a biofuel production facility on NWA's property and to have TCRY provide the necessary rail service.

In 2010, the City gave TCRY notice under the temporary service agreement that it intended to terminate the agreement. The City also presented a new track use agreement that required TCRY to relinquish its rights to use "Richland Junction" in exchange for continued use of the Horn Rapids Spur. Richland Junction is located outside the Horn Rapids Industrial Park. It appears that the City wanted to construct an at-grade crossing at Richland Junction.

The temporary service agreement terminated. TCRY refused to enter into the proposed new track use agreement offered by the City. Consequently, TCRY

can no longer use the Horn Rapids Spur unless it operates on the track as an agent of another railroad company.

NWA commenced this action asserting (1) inverse condemnation, (2) regulatory taking, (3) breach of contract, and (4) tortious interference. Notably, TCRY is not a party to this action.

The City moved for summary judgment on all claims, which the trial court granted. The court also denied NWA's motion for reconsideration.

NWA appeals.

## TORTIOUS INTERFERENCE

The first of the only two claims on appeal is the tortious interference claim. The other is the takings claim, which we address later in this opinion.

NWA argues that the trial court erred when it summarily dismissed its tortious interference claim. We hold that NWA fails to establish any genuine issue of material fact. Thus, all other facts are immaterial for summary judgment purposes.

This court reviews summary judgment orders de novo and engages in the same inquiry as the trial court.[1] Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to summary judgment as a matter of law.[2]

---

[1] Cornish Coll. of the Arts v. 1000 Va. Ltd. P'ship, 158 Wn. App. 203, 216, 242 P.3d 1 (2010).

[2] CR 56(c).

A defendant may move for summary judgment by showing that "'there is an absence of evidence to support the [plaintiff's] case.'"[3] If the defendant shows an absence of evidence, the burden then shifts to the plaintiff to set forth specific facts showing a genuine issue of material fact for trial.[4] While this court construes all evidence and reasonable inferences in the light most favorable to the nonmoving party, if the plaintiff "'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,'" summary judgment is proper.[5]

For a tortious interference with a business expectancy claim, a plaintiff must prove five elements:

> "(1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage."[6]

A complete failure of proof concerning any of these elements necessarily renders all other facts immaterial for summary judgment purposes.[7]

---

[3] Young v. Key Pharm., Inc., 112 Wn.2d 216, 225 n.1, 770 P.2d 182 (1989).

[4] Id. at 225.

[5] Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

[6] Moore v. Commercial Aircraft Interiors, LLC, 168 Wn. App. 502, 508-09, 278 P.3d 197, review denied, 175 Wn. 2d 1027 (2012) (quoting Leingang v. Pierce County Med. Bureau, Inc., 131 Wn.2d 133, 157, 930 P.2d 288 (1997)).

[7] Boyce v. West, 71 Wn. App. 657, 665, 862 P.2d 592 (1993).

*Improper Purpose or Means*

NWA argues that the City's termination of the service agreement was for an improper purpose. It argues that this interference was improper for three reasons: "(1) the interference was wrongfully motivated, and conducted in bad faith; (2) the bad-faith interference led to bad-faith negotiations in violation of the 2001 [temporary service agreement]; and (3) [t]he City's requirement that TCRY relinquish its rights to Richland Junction was arbitrary and capricious, and therefore wrongful." We disagree with all three of these reasons.

As an initial matter, the City argues that NWA is precluded from arguing the second and third reasons because it did not preserve them below. We agree in part.

"When reviewing a grant of summary judgment, we consider solely the issues and evidence the parties called to the trial court's attention on motion for summary judgment."[8] But "'new issues may be raised for the first time in a motion for reconsideration, thereby preserving them for review, where . . . they are not dependent upon new facts and are closely related to and part of the original theory.'"[9]

Here, NWA did not discuss the second and third reason in its response to the City's motion for summary judgment. But in its motion for reconsideration,

---

[8] Schreiner Farms, Inc. v. Am. Tower, Inc., 173 Wn. App. 154, 158, 293 P.3d 407 (2013) (citing RAP 9.12).

[9] Id. (quoting Nail v. Consol. Res. Health Care Fund I, 155 Wn. App. 227, 232, 229 P.3d 885 (2010)).

NWA briefly referenced the second reason.[10] Thus, we address that second reason.

As for the third reason, NWA concedes in its reply brief before this court that it did not use the words "arbitrary and capricious" in its motion for reconsideration. Further, the cases NWA cites to support the third reason does not appear in its motion for reconsideration.[11] For these reasons, we do not consider the third reason.

As noted above, for the fourth element of a tortious interference claim, a plaintiff must prove that the defendant interfered for an improper purpose or used improper means.[12]

"Interference is for an improper purpose if it is wrongful by some measure beyond the interference itself, such as a statute, regulation, recognized rule of common law, or an established standard of trade or profession."[13] But exercising one's legal interests in good faith is not an improper interference.[14]

---

[10] Clerk's Papers at 636 ("That the intentional interference was for an improper purpose and by an improper means is also amply demonstrated by the recitation regarding Richland's breach of its duty of good faith to Plaintiff above.").

[11] Compare Brief of Appellant at 23-24 (citing Pleas v. City of Seattle, 112 Wn.2d 794, 774 P.2d 1158 (1989); Landmark Dev., Inc. v. City of Roy, 138 Wn.2d 561, 980 P.2d 1234 (1999)), with Clerk's Papers at 621-37.

[12] Moore, 168 Wn. App. at 509.

[13] Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp., Inc., 114 Wn. App. 151, 158, 52 P.3d 30 (2002).

[14] Leingang, 131 Wn.2d at 157.

The only case that NWA cites to support its assertion that the City's interference was for an improper purpose is Cherberg v. Peoples National Bank of Washington.[15] There, a tenant sued a landlord after the landlord told the tenant that it would not repair a wall despite its duty to repair structural components.[16] In its action, the tenant asserted that the landlord breached the duty to repair in the lease and that the landlord intentionally interfered with its business expectancies.[17]

The supreme court explained, "An examination of the testimony presented at trial when considered in a light most favorable to [the tenant], indicates a number of facts from which an inference of a bad faith motive for breach might be drawn."[18] It held that the landlord's "intentional and outrageous action in breaching [the lease] interfered with the business relationship that the [tenants] had with their customers."[19]

Here, like Cherberg, NWA points to a contract. It contends that the City acted with an improper purpose when it terminated the temporary service agreement. But, unlike Cherberg, this contract was between the City and TCRY, an entity that is not a party to this lawsuit. Thus, whether there was any breach

---

[15] Brief of Appellant at 18-20 (citing Cherberg v. Peoples Nat'l Bank of Wash., 88 Wn.2d 595, 564 P.2d 1137 (1977)).

[16] Cherberg, 88 Wn.2d at 598-99.

[17] Id. at 599.

[18] Id. at 606.

[19] Houser v. City of Redmond, 91 Wn.2d 36, 41, 586 P.2d 482 (1978) (discussing the holding in Cherberg, 88 Wn.2d 595).

of this contract is not at issue in this case. Because the decision in <u>Cherberg</u> was based on the conclusion that the landlord breached a duty under the lease, that case is not helpful for establishing that the City interfered for an improper purpose in this case.

Further, other than <u>Cherberg</u>, NWA does not point to any other "measure beyond the interference itself" to show that termination of the temporary service agreement was "wrongful."[20] NWA argues that "the City was aware that the termination of the [temporary service agreement] placed pressure on 10 NWA as well as TCRY, and that the railroad access was required for 10 NWA to utilize the property for the purposes for which it had been purchased and its improvements constructed." But NWA does not point to a "statute, regulation, recognized rule of common law, or an established standard of trade or profession" to establish that this "pressure tactic" was wrongful.[21]

Because NWA fails to establish a genuine issue of material fact for this necessary element of a tortious interference claim, any factual issues for the other elements are not material for summary judgment purposes.[22] Dismissal of this claim was proper.

## INVERSE CONDEMNATION

NWA next argues that the trial court erred when it summarily dismissed its inverse condemnation claim. Specifically, NWA argues that it established that

---

[20] <u>Newton Ins. Agency</u>, 114 Wn. App. at 158.

[21] <u>Id.</u>

[22] <u>Boyce</u>, 71 Wn. App. at 665.

there was a "taking" because the City's termination of the temporary service agreement "injured 10 NWA by decreasing the volume of cars that the property would be handling." We disagree.

The Washington Constitution provides that "[n]o private property shall be taken or damaged for public or private use without just compensation having been first made . . . ."[23] A party alleging inverse condemnation must establish "'(1) a taking or damaging (2) of private property (3) for public use (4) without just compensation being paid (5) by a governmental entity that has not instituted formal [condemnation] proceedings.'"[24]

"A 'taking' occurs when government invades or interferes with the use and enjoyment of property, and its market value declines as a result."[25] But the interference must be more than "'a mere tortious interference.'"[26] "There must be an invasion [or interference] that is permanent or recurring, or an invasion [or interference] that involves 'a chronic and unreasonable pattern of behavior by the government.'"[27] The invasion or interference is "permanent if the property may

---

[23] CONST. art. I, § 16.

[24] Fitzpatrick v. Okanogan County, 169 Wn.2d 598, 605-06, 238 P.3d 1129 (2010) (quoting Dickgieser v. State, 153 Wn.2d 530, 535, 105 P.3d 26 (2005)).

[25] Gaines v. Pierce County, 66 Wn. App. 715, 725, 834 P.2d 631 (1992).

[26] Id. (quoting N. Pac. Ry. Co. v. Sunnyside Valley Irrigation Dist., 85 Wn.2d 920, 924, 540 P.2d 1387 (1975)).

[27] Id. at 725-26 (citations omitted) (quoting Orion Corp. v. State, 109 Wn.2d 621, 671, 747 P.2d 1062 (1987)).

not be restored to its original condition."[28]

Here, NWA fails to establish that there was a "taking." Even if the City interfered with NWA's use of its property when it terminated TCRY's temporary service agreement, this interference is not permanent or recurring. TCRY may enter into another service agreement with the City, which would restore NWA's use of its property. Further, NWA could seek rail service from a different railroad company.

In sum, there is no showing of a taking. Summary dismissal of this claim was also proper.

We affirm the summary judgment order.

_Cox, J._

WE CONCUR:

_Leach, C.J._     _Becker, J._

---

[28] N. Pac. Ry. Co., 85 Wn.2d at 924.