[No. 37600. Department Two. September 9, 1965.]

CONTINENTAL CASUALTY COMPANY, *Respondent*, v. MUNICIPALITY OF METROPOLITAN SEATTLE, *Respondent*, GENERAL CONSTRUCTION COMPANY *et al.*, *Appellants.**

*Reported in 405 P.2d 581.

*Robert K. Waitt* (of *Murray, Dunham & Waitt*), for appellant General Construction Company.

*Bogle, Bogle & Gates, Orlo B. Kellogg,* and *Richard S. Sprague,* for appellant Travelers Indemnity Company.

*Lycette, Diamond & Sylvester, Martin L. Wolfe,* and *Albert O. Prince,* for respondent Continental Casualty Company.

*Preston, Thorgrimson, Horowitz, Starin & Ellis, James R. Ellis,* and *Gordon G. Conger,* for respondent Municipality of Metropolitan Seattle.

WEAVER, J.—This is an appeal from a declaratory judgment construing the indemnity provisions of a written contract.

Four parties are involved on this appeal: Continental Casualty Company, a foreign corporation; Municipality of Metropolitan Seattle, a municipal corporation; General Construction Company, a corporation; and Travelers Indemnity Company, a foreign corporation. For brevity, we refer to the parties as Continental, Metro, General Construction, and Travelers.

The facts were presented to the trial court on written stipulation of counsel.

By competitive bid, Metro (defendant and respondent) awarded General Construction (defendant and appellant) "Sewage Disposal Project Contract No. 61-4." Continental (plaintiff and respondent) is the liability insurance carrier of Metro. Travelers (defendant and appellant) is the surety on the performance bond of General Construction. Generally, the work performed by General Construction on the sewage disposal project consisted of "making excavations varying from 20 to 40 feet in depth, dewatering the excavations, driving continuous sheet steel piling, laying large diameter sewer pipe, backfilling the excavation, restoring the surface and cleaning up."

A number of lawsuits have been commenced against Metro by property owners seeking compensation for damages allegedly caused by dewatering and pile driving activi-

ties of General Construction which resulted in vibration and loss of subjacent support. These actions are based upon either or both of two theories: (1) negligence upon the part of General Construction or (2) an unconstitutional taking or damaging of property without payment or compensation therefor by Metro in violation of Article 1, § 16 of the state constitution.

Metro tendered the defense of all of the lawsuits to General Construction. The company has refused to defend those actions in which the claimants do not allege that their damage occurred through negligence on the part of General Construction.

The parties stipulated that General Construction refused the tendered defense of an action by Ralph Parshall against Metro; that the claim has been reduced to judgment; and that General Construction has refused to indemnify Metro for the judgment.

This action springs from the indemnity provisions of the contract between Metro and General Construction. We omit immaterial language:

> The contractor [General Construction] covenants . . . that he will indemnify [Metro] . . . . from any loss, damage, costs, charge or expense whether : . . to persons or property to which [Metro] . . . may have been put . . . by reason of any act, action, neglect, omission or default on the part of the Contractor [General Construction] . . . .
>
> In case any suit . . . shall be brought against [Metro] . . . on account of . . . any act, action, neglect, omission or default of the Contractor [General Construction] . . . the Contractor [General Construction] hereby covenants . . . to assume the defense thereof . . . and to pay any and all costs, charges, attorneys' fees and other expenses and any and all judgments that may be incurred by or obtained against [Metro] . . . .

The lawsuits against Metro triggered this action by Continental (Metro's liability insurance carrier) for a declaratory judgment interpreting the indemnity provision of the

Metro-General Construction contract as applied to the stipulated facts. The trial court entered its judgment based upon most of the issues presented by Metro's cross complaint for a declaratory judgment against all of the parties.

The following portions of the declaratory judgment of the trial court are material to the issues on this appeal:

6. Construing Contract 61-4 as a whole, this court declares that the foregoing indemnification provision includes within its terms any suits or legal proceedings brought by third-party claimants for damages which were proximately caused by the construction activities of defendant, General Construction Company, or its subcontractors performed under such Contract, whether such defendant was negligent in the performance of such construction activities or whether such activities were performed by such defendant without negligence and whether or not such claimants allege that such damages constitute an unconstitutional taking or damaging of property.

7. This court further declares that the judgment heretofore entered against said Municipality of Metropolitan Seattle in King County Cause No. 597179, *Ralph Parshall, et ux. v. Municipality of Metropolitan Seattle,* is included within the aforesaid indemnification provision and that defendant General Construction Company is therefore required by the terms of Contract 61-4 to indemnify the Municipality of Metropolitan Seattle from said judgment and $100 attorney's fees.

8. By the declaration set forth in this decree, this court construes Contract 61-4, but does not adjudge or determine the merits of any affirmative defenses asserted by General Construction Company.

■■ The crux of this appeal is the interpretation to be given to the words "any act, action, neglect, omission or default on the part of the Contractor" as they appear in the indemnity provision of the Metro-General Construction Contract 61-4, quoted *supra*. Appellant General Construction would have us read into the contract a limitation of its responsibility for damages arising from its own *tortious* conduct. In *Union Pac. R.R. Co. v. Ross Transfer Co.,* 64 Wn.2d 486, 392 P.2d 450 (1964), we refused to read into an indemnity contract an exclusion for concurrent negligence.

In *Union Pac. R.R. Co., supra,* we approved the rule that:

". . . Contracts of indemnity, therefore, must receive a reasonable construction so as to carry out, rather than defeat, the purpose for which they were executed. To this end they should neither, on the one hand, be so narrowly or technically interpreted as to frustrate their obvious design, nor, on the other hand, so loosely or inartificially as to relieve the obligor from a liability within the scope or spirit of their terms."

We are impressed by the statement of the New Jersey court when it said:

indemnity clauses of construction contracts are to be viewed realistically as efforts by business men to allocate as between them the cost or expense of the risk of accidents apt to arise out of construction projects on a fairly predictable basis, rather than upon the generally debatable and indeterminate criteria as to whose negligence, if any, the accident was caused by, and to what degree.

. . . . .

*Causation, not negligence, is the touchstone.* (Italics ours.) *Buscaglia v. Owens-Corning Fiberglas,* 68 N.J. Super. 508, 515, 172 A.2d 703 (1961).

We need not go beyond the perimeter of the contract before us. Basically, our reasons for affirming the trial court are two: (1) the specific language of the indemnity provision requires it; and (2) other provisions of the contract are consistent with this conclusion.

Admittedly, the terms of the indemnity provision are broad, but the duties and obligations of the parties must be determined and measured by the language of the agreement. We deem the language clear and unambiguous: General Construction covenanted to indemnify Metro for any loss Metro might suffer by reason of "any act, action, neglect, omission or default" on the part of General Construction. Giving ordinary meaning to the words of the provision, they place responsibility upon General Construction for (1) any default or negligence in the performance of its contractual obligations and (2) any act or action which directly or indirectly results in loss to Metro. Literally, the words "act" or "action" are not qualified by the word "neglect."

Metro's legal liability for damages caused by an act of General Construction is, of course, an element necessary to implement the indemnity provision of the contract. *Oregon-Washington R.R. & Nav. Co. v. Washington Tire & Rubber Co.*, 126 Wash. 565, 219 Pac. 9 (1923); *State ex rel. Macri v. Bremerton*, 2 Wn.2d 243, 97 P.2d 1066 (1940).

"Causation, not negligence, is the touchstone."

Numerous portions of the voluminous contract between Metro and General Construction indicate that the language of the indemnity provision, as we have interpreted it, is consistent with the entire contract, a conclusion noted by the trial court in its declaratory judgment.

We mention only a few. Bidders were invited to inspect the work and satisfy themselves of actual conditions. Submission of a bid constituted acknowledgment that the bidder had relied on his own examination. The bidder was required to make his own deductions as to the nature of the materials to be excavated, the difficulty of maintaining the required excavation, and of doing any work affected by subsurface conditions and to "accept full responsibility therefor." The contractor was permitted to use any method of excavation which would not damage or endanger adjacent structures or property. The contract directed the contractor to dewater the excavations so as not to cause injury to public or private property, and to operate the dewatering system so that the ground-water level outside the excavation be "not reduced to the extent that would damage or endanger adjacent structures or property."

The foregoing contractual requirements, combined with the indemnity provision, clearly negate the contention that General Construction agreed only to refrain from negligently damaging adjacent property.

Next, General Construction argues that since Metro cannot delegate its right of eminent domain, any claim against Metro by a third party for damages arising from an unconstitutional taking of property contrary to Article 1, § 16 arising from an act of General Construction cannot be covered by the indemnity provision of the contract. The

suggestion is a non sequitur. *State v. Williams*, 12 Wn.2d 1, 120 P.2d 496 (1941), upon which General Construction relies, stands only for the proposition that a municipality having the right of eminent domain cannot delegate its responsibility in a way that would deprive an *injured property owner* of his right to sue the municipality. As between Metro and General Construction, the ultimate responsibility for payment depends upon the contract between them; it does not depend upon the legal characterization which a third-party damage claimant may make of his rights against either Metro or General Construction.

Finally, we do not find *Puyallup v. Vergowe,* 95 Wash. 320, 163 Pac. 779 (1917); *Aberdeen Constr. Co. v. Aberdeen,* 84 Wash. 429, 147 Pac. 2 (1915); *Ettor v. Tacoma,* 77 Wash. 267, 137 Pac. 820 (1914) apposite. *Puyallup* and *Aberdeen* involved an independent act of negligence by the municipality. *Ettor* does not involve a written contract of indemnity as does the instant case.

The judgment is affirmed.

ROSELLINI, C. J., FINLEY, OTT, and HAMILTON, JJ., concur.

---

December 21, 1965. Petition for rehearing denied.