[No. 124-40870-1.    Division One.    April 13, 1970.]
Panel 2

NORTHERN PACIFIC RAILWAY COMPANY, *Respondent*, v. NATIONAL CYLINDER GAS DIVISION OF CHEMETRON CORPORATION, *Appellant*.

*Martin, Shorts & Bever* and *Edward C. Burch,* for appellant.

*Roger J. Crosby* and *Owen J. Wales,* for respondent.

UTTER, J.—Northern Pacific Railway Co. brought an action for indemnification under the terms of a contract entered into between it and National Cylinder Gas.[1] The indemnification sought was for payments made in settlement by Northern Pacific to an employee of theirs for injuries sustained while working on a project under the alleged control of National.

The court held for Northern Pacific, finding National had breached the indemnification provision of the contract. National appeals and urges the court on appeal to consider the matter de novo. They also assign as error the certain findings of fact entered by the trial court and the court's conclusion that the contract does not require the showing of negligence fault or liability of any party to impose an obligation on National to save Northern Pacific harmless from the claim of its injured workman.

National and Northern Pacific entered into a "CONTRACT FOR WELDING RAIL" on April 15, 1964. (The issues in the appeal concern sections 3 and 10 of this contract.)[2]

---

[1]National Cylinder Gas will hereafter be referred to as National and Northern Pacific Railway Co. as Northern Pacific.

[2]Section 3. "All necessary equipment and the housing therefore [*sic*] and the complete operation shall be provided by NCG . . .

Section 10. "NCG shall indemnify and save harmless the RAILROAD from any and all claims, suits, losses, damages or expenses on account of injuries to or death of any and all persons whomsoever, including NCG, subcontractors, employees of NCG, subcontractors and of the RAILROAD, and any and all property damage, arising or growing out of, or in any manner connected with the work performed under this contract, or caused or occasioned in whole or in part by reason of the presence of the person or of the property of NCG, subcontractors, their

Rails were welded together in the welding car and then passed into the grinder car where the newly welded sections were ground to a smooth finish. The rail was then moved onto rail-carrying flat cars and moved over roller-racks to the end of the cars.

Earl W. Sisk, Jr., a railroad employee, was the "point man." His job was to see that the rails entered on the proper rollers as they moved along. While the welding contract was in effect, Earl W. Sisk, Jr. lost his right leg when it was crushed by a moving rail. The accident occurred on Northern Pacific's railroad site at a point about 1,365 feet from the car where the rails were being welded together by employees of National.

Pursuant to the obligation of National to defend, Northern Pacific tendered the claim of Sisk to National. The tender was refused and thereafter, with court approval, Northern Pacific settled the claim. Northern Pacific then brought suit claiming that under the terms of the welding contract National agreed to indemnify Northern Pacific for the loss in question.

National first argues that inasmuch as all the facts and exhibits were agreed upon by counsel and there were no witnesses whose credibility was at issue, this court should consider the case de novo. Although no live testimony was taken, certain agreed facts were before the court as was a statement of the injured workman from which conflicting conclusions could be drawn. It is argued that inasmuch as the factual determinations depend upon proper conclusions to be drawn from practically indisputed evidence, the appellate court has the duty to try the case de novo. We disagree.

---

employees or agents, upon or in proximity to the property of the RAILROAD, except when such claims, suits, etc., arise out of the sole negligence of the RAILROAD.

"NCG further agrees that it will defend, at its own expense, in the name and on behalf of the RAILROAD, all claims or suits for injuries to persons or damage to property arising or growing out of the work carried on under this contract, except when such claims or suits arise out of the sole negligence of the RAILROAD."

■   In *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959) the court pointed out appellate jurisdiction on review is limited by RCW 4.44.060 which provides:

The finding of the court upon the facts shall be deemed a verdict, and may be set aside in the same manner and for the same reason as far as applicable, and a new trial granted.

It concluded that where the findings are amply sustained by the proofs, the constitution does not authorize an appellate court to substitute its findings for those of the trial court.

In support of its position, National cites four cases decided prior to *Thorndike*. These cases will not be discussed. Two cases, *In re Estate of Coates*, 55 Wn.2d 250, 347 P.2d 875 (1959) and *Smith v. Skagit County*, 75 Wn.2d 715, 453 P.2d 832 (1969) decided subsequent to *Thorndike* were also cited.

*Coates* is not authority for a position contrary to *Thorndike*. Although it contains some contradictory language, that language is dicta inasmuch as the court held the criticized finding of the trial court was without evidentiary support.

The *Smith* case and the cases cited therein decided subsequent to *Thorndike* were rezoning appeals involving review of writs of certiorari, mandamus or prohibition.

The trial court in *Smith* was reviewing action of a planning commission and board of commissioners and was acting in an appellate capacity. In these circumstances its review is generally limited to question of "law." The trial court is concerned with determining whether the administrative action of the zoning authorities was arbitrary and capricious. This determination is a question of law. 4 K. Davis, Administrative Law Treatise 114 (1958); 2 Am. Jur. 2d *Administrative Law* § 650. The superior court's examination of administrative findings of fact is limited to determination of whether they are supported by substantial evidence. Questions of fact, policy or discretion are deter-

mined by the administrative agency. 2 Am. Jur. 2d *Administrative Law* § 555. If the findings are supported by substantial evidence, they are accepted as final on appeal. *Northern Pac. Ry. v. State Util. & Transp. Comm'n,* 68 Wn.2d 915, 416 P.2d 337 (1966).

The determination by the trial court of the question of whether findings of a planning commission and board of commissioners are supported by substantial evidence is a question of law, not of fact. The review of this determination by an appellate court is likewise based upon a determination of the question as a matter of law, not of fact. The determination by a trial court of a question as a matter of law is not subject to the same statutory protection as is its determination of a question of fact. The *Smith* case does not stand for a different rule than that announced in *Thorndike.*

■ The remaining questions focus on the wording and meaning of the indemnity agreement. In *Continental Cas. Co. v. Municipality of Metropolitan Seattle,* 66 Wn.2d 831, 405 P.2d 581 (1965), our court stated as a general policy regarding indemnity agreements that:

> indemnity clauses of . . . contracts are to be viewed realistically as efforts by business men to allocate 'as between them the cost or expense of the risk of accidents apt to arise out of construction projects on a fairly predictable basis, rather than upon the generally debatable and indeterminate criteria as to whose negligence, if any, the accident was caused by, and to what degree.
>
> . . . .
>
> *Causation, not negligence, is the touchstone.*

In that same case it was also emphasized that contracts of indemnity must receive a reasonable construction so as to carry out, rather than defeat, the purpose for which they were executed. To this end they should neither be so narrowly or technically interpreted as to frustrate their obvious design, nor, on the other hand, so loosely or inartificially as to relieve the obligor from liability within the scope or spirit of their terms.

■ The trial court commented in its oral opinion it was significant the agreement at no point mentioned the word "negligent" or any concept of fault. It noted the language used concerned itself solely with the occurrence of an incident which would later give rise to a claim or lawsuit. The trial court further stated the language of section 10 of the agreement did not contemplate the process of welding be isolated into a separate operation under the indemnity agreement. To the contrary, it found the broad language of section 10 indicated the indemnity agreement applied not only to the welding, but to any activity in any manner performed under the contract.

The trial court concluded the agreement was a clear undertaking based upon causation rather than negligence or fault and had the intention of the parties been otherwise, they could clearly and simply have provided in the agreement that the obligation to indemnify would be subject to fault on the part of National in connection with some phase of the welding operation. It could also have easily been limited to the welding operation itself rather than specifically including anything in any manner connected with any work performed under the contract. We reach the same conclusion as the trial court.

National argues that inasmuch as the trial court did not find negligence on its part, it cannot be required to indemnify Northern Pacific. Under the terms of the indemnity provision of the contract, the trial court's finding that National's activities *caused* the injuries out of which the claim arose is sufficient to establish liability. *Continental Cas. Co. v. Municipality of Metropolitan Seattle, supra.*

National argues it is contrary to public policy to permit one solely responsible for an injury to indemnify himself against that sole negligence, citing RCW 4.24.115.[3] The trial

---

[3]RCW 4.24.115 · "Validity of agreement to indemnify against liability for negligence relative to construction, alteration, improvement, etc. of structure or improvement attached to real estate. A covenant, promise, agreement or understanding in, or in connection with or collateral to, a contract or agreement relative to the construction, alteration,

court did not find the cause of the accident was the sole negligence of Northern Pacific and this argument is thus without foundation.

National further argues that inasmuch as the injury occurred away from the welding car in the process of rail placement, it had no liability as the injury was outside of the scope of the welding contract. Section 3 of the welding contract heretofore quoted places with National the responsibility for the "complete operation." The trial court's findings, which are supported by substantial evidence, state specifically:

> Earl W. Sisk, Jr., was injured by operations or activities within the scope of the operations performed by defendant, National Cylinder Gas . . ., pursuant to its contract with the plaintiff, Northern Pacific Railway Company, to weld rail, executed April 1, 1964.

These findings dispose of the issue of causation within the terms of the contractual liability.

The trial court found the injury to Earl W. Sisk, Jr. was not caused by any negligence of Northern Pacific. Based on this finding, National argues the payment by Northern Pacific to Sisk was as a volunteer and not based on any liability and therefore they could not recover from National. National cites *Continental Cas. Co. v. Municipality of Metropolitan Seattle, supra,* and *Nelson v. Sponberg,* 51 Wn.2d 371, 318 P.2d 951 (1957) to sustain this contention. The *Nelson* case does not apply. In that case the court was discussing the liability of joint tort-feasors whose obligations were not based on a contract between the parties.

The trial court's opinion, with which we agree, indicated the undertaking was to indemnify the railroad for any

repair, addition to, subtraction from, improvement to, or maintenance of, any building, highway, road, railroad, excavation, or other structure, project, development, or improvement attached to real estate, including moving and demolition in connection therewith, purporting to indemnify against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the indemnitee, his agents or employees is against public policy and is void and unenforceable."

claim that arose out of any activity connected with the welding operation, irrespective of fault leading to that claim. Considering Northern Pacific's lack of control of the actual physical operation of the welding and the speed of the movement of the welded rail to its storage area, this provision appears to us to be a realistic effort by the parties to allocate as between them the cost and expense of the risk of accidents apt to arise. Although this interpretation of the indemnity clause of the contract makes it substantially equivalent to an agreement to insure the railroad against claims, this does not strike us as an unreasonable construction in light of the circumstances we have already indicated.

■ Under the terms of the contract between the parties, Northern Pacific's payment to Sisk did not make it a volunteer. At the time they paid Sisk they had tendered the defense of the claim to National who refused to defend. No determination of who was or was not negligent had been made by the court. National does not argue and from the record we find no reason to suspect the settlement was unreasonable or that it was made in bad faith without a belief by Northern Pacific that, at the time they settled, they might face some liability to Sisk. Under these circumstances, the failure of the indemnitor to defend the action when the subject matter of the suit is within the scope of the indemnity agreement is itself a breach of contract and entitles the indemnitee to recover from the indemnitor the amount of any reasonable settlement made in good faith. *Bosko v. Pitts & Still, Inc.*, 75 Wn.2d 856, 454 P.2d 229 (1969); *Clow v. National Indem. Co.*, 54 Wn.2d 198, 339 P.2d 82 (1959); *Hering v. St. Paul-Mercury Indem. Co.*, 50 Wn.2d 321, 311 P.2d 673 (1957); *Evans v. Continental Cas. Co.*, 40 Wn.2d 614, 245 P.2d 470 (1952); *Dowell, Inc. v. United Pac. Cas. Ins. Co.*, 191 Wash. 666, 72 P.2d 296 (1937); 28 Wash. L. Rev. 239 (1948); see also Annot. 49 A.L.R.2d 694 (1956) and 44 Am. Jur. 2d *Insurance* § 1525.

The above-cited cases all involve indemnity provisions of insurance contracts. However, in light of the wording of

this indemnity provision, we see no reason why the rule stated should not apply to the indemnity provisions of the contract between National and Northern Pacific.

National's contention that liability of Northern Pacific to Sisk must exist for Northern Pacific to collect from them is not supported by the Washington cases.

The cornerstone case in this field is *Oregon-Wash. R.R. & Nav. Co. v. Washington Tire & Rubber Co.*, 126 Wash. 565, 219 P. 9 (1923). There the court found that in the absence of "legal liability" on the part of the indemnitee, payments made in settlement of the claim could not be recovered from the indemnitor, as the indemnitee had acted as a mere volunteer in making the payments. The court based its decision on an interpretation of the indemnification agreement which provided the indemnitor " 'shall indemnify and save harmless the railroad from all *liability* for . . .' " (Italics ours.) The word "liability" was found to mean "legal liability." There was no tender of the defense of the claim to the indemnitor.

In *State ex rel. Macri v. Bremerton,* 2 Wn.2d 243, 97 P.2d 1066 (1940) an indemnification agreement provided that "The contractor . . . agrees to indemnify and hold harmless the City from any and all claims for damages . . ." The court, citing *Oregon-Wash.*, found the covenant to indemnify and hold harmless the city against "any and all claims for damages" must be construed to have reference to damages arising from "legal liability." In doing so, the court, perhaps unintentionally, extended the rule of the *Oregon-Wash.* case far beyond the limits originally defined in that case. In any event, *Macri* is not applicable in the current case. The indemnification agreement contained no covenant to defend and the indemnitee did not demand the indemnitor make settlement until a default judgment had already been entered against the indemnitee without the knowledge of the indemnitor.

In *Continental Cas. Co. v. Municipality of Metropolitan Seattle, supra,* the indemnification agreement did contain a covenant to defend and the indemnitee did tender the de-

fense of the claim to the indemnitor, which defense was refused. The claim, however, was not compromised and settled, but was reduced to judgment. There was therefore no question of the indemnitee's legal liability and the sole question in the case was whether, under the terms of the indemnification agreement, the indemnitor was liable only for those damages arising from its own negligent conduct. The court noted the duties and obligations of the parties must be determined and measured by the language of the agreement and concluded the language of the indemnification agent was clear and unambiguous and did not qualify the indemnitor's liability. The court did include in its opinion a statement that "legal liability for damages caused by an act of General Construction is, of course, an element necessary to implement the indemnity provision of the contract." Inasmuch as the question of liability was not an issue in the case, that statement was not necessary to the holding and does not establish an inflexible rule requiring establishment of liability as a condition precedent for indemnification, regardless of the wording of the agreement.

The parties can, as noted in *Oregon-Wash.*, specifically provide by their contract that "legal liability" of the indemnitee is a condition precedent to the obligation of the indemnitor to indemnify the indemnitee. The parties may also provide, by the wording of their contract, for a result such as that obtained in this case. They may specify that the obligation to indemnify is determined by causation, not negligence or liability in the technical legal sense. As noted in *Continental Cas. Co. v. Municipality of Metropolitan Seattle, supra,* they may do so in an effort "to allocate as between them the cost or expense of the risk of accidents apt to arise out of construction projects on a fairly predictable basis, rather than upon the generally debatable and indeterminate criteria as to whose negligence, if any, the accident was caused by, and to what degree."

The judgment of the trial court is affirmed.

JAMES, C. J., and WILLIAMS, J., concur.