Filed 3/5/15 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., | B244899 and B247258 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC359837) |
| v. | ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT] |
| TOKIO MARINE AND NICHIDO FIRE INSURANCE COMPANY et al., | |
| Defendants and Respondents. | |


THE COURT:

It is ordered that the opinion filed herein on February 4, 2015 be modified as follows:

1.  On page 2, in the first sentence of the second paragraph, delete the words "the costs of defending the Daer action as well as" and delete footnote 2.

2.  On page 4, delete the second paragraph in its entirety and replace it with the following sentence:

According to Yokohama, Costco terminated it as a vendor in 1996 and ceased all purchases from Yokohama in September 1997.

3.  On page 5, in the first sentence of the last paragraph delete the words "to recover the costs of defense of, and."

4.  Starting on p. 12, delete the two full paragraphs under the heading "2. *Interpretation of indemnity provision of Supplier Agreement*" and insert in their place the following six paragraphs:

National Union contends on appeal that the "trial court improperly failed to rule on the effect of Yokohama's refusal to defend;" Yokohama concedes that the trial court did not rule on the matter.  National Union argues that this question is fundamental to its claim for contractual indemnity, as its resolution determines which party will bear the burden of proof at trial on the issue of indemnity.

National Union's argument begins with the language of the indemnity provision at issue, which is contained in paragraph 10.2 of the Supplier Agreement.  It states:  "10.2 [Yokohama] shall indemnify, defend, and hold [Costco] harmless from all liability and expense, actual or alleged, death of or injury to any person, damage to any property, or any other damages or loss, by whomsoever suffered, (including without limitation, reasonable attorneys' fees) which [Costco] may incur as a result of any claim, suit or action against [Costco] arising out of defective design, workmanship or materials in any Product manufactured by [Yokohama] hereunder, including the failure to provide adequate warnings, labeling instructions as required by all applicable law*; provided that such indemnity is expressly limited by its terms and does not include indemnification of [Costco] for any liability arising out of the actions or negligence of [Costco].*"  (Emphasis added.)

National Union maintains that the plain meaning of this language is that, although Yokohama's obligation *to indemnify* Costco was limited to Costco's liability not founded upon its own negligence (e.g., products liability as the seller of a defective product), Yokohama was required *to defend* Costco against the Daer action whether or not it asserted a negligence cause of action against Costco.  Thus, National Union argues that the exception to Yokohama's obligations under paragraph 10.2 (italicized above) provides that Yokohama's obligation to indemnify Costco does not extend to liability imposed on account of the latter's negligence; there is no similar limitation which affects Yokohama's duty to defend Costco in a lawsuit alleging a defective Yokohama tire.

2

Costco tendered defense of the Daer action to Yokohama, but received no response. Costco thus asserts that Yokohama breached its duty to defend the Daer action.

Having concluded that Yokohama was in breach of its duty to defend, National Union next cites Washington law to the effect that "the failure of the indemnitor to defend the action when the subject matter of the suit is within the scope of the indemnity agreement is itself a breach of contract and entitles the indemnitee to recover from the indemnitor the amount of any reasonable settlement made in good faith." (*Northern Pac. Railway Co. v. National Cylinder Gas Div. of Chemetron Corp.* (1970) 2 Wash.App. 338, 345 [467 P.2d 884, 889].) Moreover, under California evidentiary law, where the indemnitor refuses to defend, the settlement becomes "'presumptive evidence of liability of the indemnitee and of the amount but may be overcome by proof from the indemnitor that the settlement was unreasonable. . . .'" (*Linear Technology Corp. v. Applied Materials, Inc.* (2007) 152 Cal.App.4th 115, 130, quoting *Peter Culley & Associates v. Superior Court* (1992) 10 Cal.App.4th 1484, 1497.) From the foregoing, National Union concludes that in order to prevail on its indemnity claim, it has only to prove that: "(1) Costco's defense was tendered to Yokohama and was not accepted; (2) its settlement was an 'expense' on account of 'alleged' 'liability'; (3) the settlement was reasonable; and (4) the alleged liability represented by the settlement was within the indemnity provision" of the Supplier Agreement. National Union thus contends that the trial court erred in ruling that it was National Union's burden to prove that the tire was defective.

Yokohama challenges the assertion that it breached a duty to defend Costco against the Daer action. It argues that, unlike California law, in Washington, a contractual indemnitor's obligation to defend claims brought against its indemnitee is not determined by the allegations of the complaint, but instead "by the facts known at the time of the tender of defense." (*George Sollitt Corp. v. Howard Chapman Plumbing & Heating, Inc.* (1992) 67 Wash.App. 468, 472 [836 P.2d 851, 853].) Thus, for example, in the cited case, the appellate court referenced the defendant's answers to the plaintiff's interrogatories in determining that "this is not a case of sole negligence," thereby concluding that the defendant had a contractual duty to defend. (*Ibid.*)

3

We express no opinion on the proper resolution of this issue.  We agree with National Union, however, that the trial court erred in failing to rule on whether the Supplier Agreement obligated Yokohama to assume Costco's defense of the Daer action at the time of tender.  Because we remand this matter for a new trial, the parties will have the opportunity to argue the issue to the trial court and obtain a ruling which, in turn, will determine their respective burdens in prosecuting and defending this lawsuit.

There is no change in the judgment.  Petitions for rehearing are denied.

_____

TURNER, P.J.                    KRIEGLER, J.                    GOODMAN, J.*

---

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

4

Filed 2/4/15 (unmodified version)

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> TOKIO MARINE AND NICHIDO FIRE INSURANCE COMPANY et al., <br><br> Defendants and Respondents. | B244899 and B247258 <br><br> (Los Angeles County <br> Super. Ct. No. BC359837) |


APPEAL from a judgment of the Superior Court of Los Angeles County, Mary Thornton House and Richard E. Rico, Judges. Affirmed in part and reversed in part.

McCormick, Barstow, Sheppard, Wayte & Carruth LLP, James P. Wagoner, Timothy R. Sullivan, Geni K. Krogstad and Lejf E. Knutson for Plaintiff and Appellant.

Gordon & Rees LLP, Jeffrey A. Swedo and Stephanie Alexander, for Defendants and Respondents.

Plaintiff and appellant National Union Fire Insurance Company of Pittsburgh, Pa. (National Union), as excess insurer of Costco Wholesale Corporation (Costco), filed this lawsuit against Yokohama Tire Corporation (Yokohama) and its primary and excess insurers Tokio Marine & Nichido Fire Insurance Co., Ltd. (U.S. Branch) and Tokio Marine & Nichido Fire Insurance Co., Ltd., respectively (together, Tokio Marine) to recover sums it expended in settlement of a personal injury claim allegedly resulting from, among other things, material and design defects present in a tire manufactured by Yokohama and sold by Costco to Jack Daer, the plaintiff in the underlying case. Costco and Yokohama individually settled with Daer on the first day of trial, Costco for $5.5 million and Yokohama for $1.1 million.[1]

In this lawsuit, National Union sought to recover the costs of defending the Daer action as well as the $4,312,681.96[2] it paid on behalf of Costco to settle that lawsuit. National Union, as subrogee of Costco, sought recovery against Yokohama based on an express indemnity provision in the supplier agreement between the two companies, as well as an alleged breach of Yokohama's contractual insurance obligations. In addition, it sued Tokio Marine for indemnity (on its own behalf and as subrogee of Costco) and contribution (on its own behalf). Finally, National Union sued Tokio Marine on a theory of equitable subrogation for their bad faith refusal to defend Costco in the underlying lawsuit. The latter cause of action was dismissed on demurrer.

The trial court ruled in limine that National Union's proof of a tire defect would be limited to the opinions of the expert designated by Daer in the underlying case. National Union's retained expert could not opine, based solely on the opinions of Daer's expert, that the tire contained a defect in design or manufacture which caused Daer's injuries. Consequently, after National Union made its opening statement in a bifurcated proceeding to determine whether a defect in the Yokohama tire was a cause of Daer's

---

[1] Ford had settled earlier for $2 million.

[2] The discrepancy between the $5.5 million settlement amount and the $4,312,681.96 paid by National Union is accounted for by the policy's deductible limit and Costco's obligation to pay certain sums toward defense of the claim.

accident, the trial court entered a judgment of nonsuit on National Union's express indemnity claim. Having determined that the tire was not defective, the trial court granted summary adjudication as to the causes of action based on Tokio Marine's refusal to defend Costco in the Daer action, as well as the claim that Yokohama breached its insurance obligations under its supplier agreement with Costco. The trial court then awarded Yokohama $863,706.75 in attorney fees as the prevailing party on the contractual indemnity claim.

National Union challenges these rulings on appeal.[3] We conclude that the trial court erred in excluding relevant and material expert evidence on a matter properly subject to expert opinion. As a result of this evidentiary ruling, we reverse the judgment entered in favor of Yokohama and Tokio Marine on the causes of action of the operative pleading. Finally, we conclude that the trial court properly sustained Tokio Marine's demurrer to a bad faith cause of action contained in an earlier pleading. Consequently, we affirm the dismissal of the bad faith cause of action, but reverse the judgment, and remand the case to the trial court for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

In 1995, Yokohama and Costco's predecessor in interest entered into a "Private Label Agreement" (the Supplier Agreement) pursuant to which Yokohama agreed to manufacture tires for distribution and sale by Costco. Among the provisions of the Supplier Agreement relevant to this lawsuit were the requirement that Yokohama indemnify Costco for defects in design, materials and workmanship of the tires manufactured and sold under the agreement, and that it maintain products liability insurance coverage naming Costco as an additional insured during the term of the agreement.

---

[3] National Union separately appealed the attorney fee award (B247258), a post-judgment order concerning an amendment to the judgment (B249013), and the amended judgment entered on June 18, 2013 (B252786). These three appeals, currently pending in this Division, are not part of this appeal.

3

Pursuant to the terms of the Supplier Agreement, Yokohama maintained products liability insurance with Tokio-Marine (the Insurance Policy), and secured a vendor's endorsement which named Costco as an additional insured under the Insurance Policy.

Costco terminated Yokohama as a vendor in 1996 by delivery of a formal termination letter and phase out schedule. Costco ceased all purchases from Yokohama in September 1997.

Jack Daer purchased tires manufactured by Yokohama for use on his Ford Explorer at an Arizona Costco store in 1997. The Costco store regularly serviced Daer's Explorer, including the tires. In February 2001, Daer took the car to Costco to be serviced. Five weeks later, the left rear tire on the Explorer failed, causing Daer to lose control. The vehicle rolled over, and Daer sustained quadriplegic injuries.

Daer filed two lawsuits in Arizona against Yokohama, Costco, Ford Motor Co., and others. The first suit was filed in federal court in May 2001. It was abandoned and replaced two years later by a state court suit filed in March 2003.

In the state court action, Daer alleged a products liability claim against Yokohama for tire defects, a derivative products liability claim against Costco as seller of a defective tire, a negligence claim against Costco for selling him the wrong size and type of tire for his vehicle, and another negligence claim based on Costco's post-sale servicing of the tire. As to the latter claim, Daer alleged that Costco failed to take an obviously distressed and worn tire out of service, and that the company failed to detect an existing screw puncture when it rotated and balanced Daer's tires five weeks and 1,214 miles before the accident.

Costco tendered defense of the Daer action to Yokohama. Costco also tendered its defense to Tokio Marine, as an additional insured under the Insurance Policy. Respondents did not accept these tenders. Consequently, Costco defended itself against all the allegations made in the Daer lawsuits.

Daer designated Robert Ochs as his tire defect expert at trial. Ochs had opined in his reports and his deposition testimony that there were three defects in the tire: (1) evidence of porosity in the shoulder area of the tire which he claimed showed the

4

presence of contaminants in the manufacturing process; (2) the presence of strings or cords in the tire carcass which he claimed were either a contaminant or a design defect; and (3) evidence of liner pattern marks which he claimed evidence insufficient adhesion in the tire's elements.

In its defense, Yokohama maintained that the tire was not defective. Its position was that the tire had an unrepaired screw puncture and had been run underinflated for many miles causing it to overheat, and that these conditions caused the tire to fail.

Daer also offered expert testimony from Bill Haggerty regarding the service store negligence of Costco. Haggerty opined that Costco was negligent in the training of its tire technicians and in failing to inspect the tires on the Daer vehicle; that its negligent inspection failed to detect an unrepaired puncture and large bulge or bald area; and that, based on the worn condition and treadwear, the tire clearly should have been replaced by Costco in the service visit five weeks before the accident.

In the federal case, Daer had at various times identified three different tire experts – Messrs. Smith, Carlson, and Augier. Reports produced by these experts identified multiple defects in the failed tire. However, these experts were apparently never deposed in the federal case, and were deposed in the state court case only regarding a spoliation claim. They were never designated in the state court case, and did not offer expert opinions in the depositions given in the state court case. Daer identified Ochs as his sole tire defect expert in the state court case.

As noted above, on the first day of trial, July 12, 2005, Costco and Yokohama each separately settled with Daer.

National Union filed this lawsuit on October 4, 2006, to recover the costs of defense of, and the settlement it paid in, the Daer action. In its sixth amended complaint, the operative pleading, National Union asserted the following causes of action: (1) for indemnity against Tokio Marine under the Insurance Policy, on its own behalf and as subrogee of Costco; (2) for contribution against Tokio Marine under the Insurance Policy, on its own behalf; (3) for express contractual indemnity against Yokohama under the indemnity provision of the Supplier Agreement, as subrogee of Costco; and (4) for

5

breach of contract against Yokohama under the insurance provisions of the Supplier Agreement, as subrogee of Costco.[4]

In January 2011, the trial court ordered bifurcation of the fourth cause of action, the contractual indemnity claim, finding that resolution of issues in that cause of action would resolve most, if not all, of the other claims in the case. In ordering bifurcation, the trial court stated: "The 100-pound gorilla in this thing is what caused this incident, and as a result, I believe that [defendants' counsel's] argument, despite what I had said all along before, has persuaded me that we're just going to have to bite the bullet and have a jury trial on that issue, the express[] indemnity issue. Let's decide that. Because I don't think any other way, and I've looked through [plaintiffs' counsel's] stuff and I thought about it and I thought about what I said before and then how maybe some sort of a court trial would resolve matters, I don't think it will. I think the only way we're going to resolve this matter is to find out exactly what – have a jury give us an answer as to what happened vis-à-vis the tire and who's responsible for that. [¶] So my ruling would be that we will sever the matter; have a jury trial on the indemnity claim, express[] indemnity claim, which I guess is the fourth cause of action, on the date we had already set in May."

Troy Cottles, National Union's tire defect expert, was deposed in August 2011. Cottles testified that the Yokohama tire contained eight[5] discrete defects, all of which together caused the tire to fail. Cottles's theory of why the tire failed was thus substantially different from the theory proffered by Ochs, Daer's tire expert.

The trial of the contractual indemnity claim commenced in September 2011. That trial was further bifurcated into a bench trial phrase to determine the correct interpretation

---

[4]     The trial court had previously sustained without leave to amend Tokio Marine's demurrer to National Union's bad faith claim. In addition, Costco brought a claim against Tokio Marine for breach of duty to defend, which was separately adjudicated. Costco's appeal of that judgment is pending in case No. B250794.

[5]     The parties and trial court at various times indicated that Cottles identified either seven or eight defects in the tire. At oral argument, the parties mentioned nine such defects. The precise number of defects identified by Cottles is not critical to our analysis.

6

of the Supplier Agreement and the parties' respective burdens of proof. The bench trial was to be followed by a jury trial to determine if the Daer tire was defective, if Costco was negligent, and the allocation of liability between Costco and Yokohama.

Preliminary to the start of the bench trial, the parties filed motions in limine as to various evidentiary issues expected in both phases of the trial. In defense Motions in Limine Nos. 10 and 14, Yokohama sought to exclude testimony relating to certain theories of tire defect asserted by Cottles, National Union's tire expert, which had not been raised in the underlying litigation. Yokohama argued that because National Union settled the Daer case based on the evidence Daer was prepared to present at trial, defect theories asserted by Cottles which were not shared by Daer's expert were not relevant to National Union's indemnity claim.

The trial court agreed with Yokohama's position and ruled Cottles's new defect theories inadmissible. Said the court: "Look, the claim stops when the Daer case settled. Right there, indemnity is set. [Plaintiff] is suing for 5. Whatever – 5.5 there's no doubt about that number. The number can't go up, can't go down. That's the number. Everything stopped at that point as far as I'm concerned. . . . Factually, you have cases going all over the place because it all depends when these cases settled. But this one did indeed settle on the courthouse steps. So we know exactly pretty much what was going to be tried, and so in my opinion, I think that's where we put an end to things. That's the be all and end all of what the knowledge was. And, indeed, if you're going to talk about the reasonableness of the settlement, I think [National Union] would even agree that's the time when you look at it from the standpoint [of when] the matter was settled, not after the fact. You could have learned all kinds of things after the fact. . . . [¶] So, no. It stops right then and there. I don't believe that [National Union] can – Mr. Cottles can come up with new theories that weren't raised by Daer at the time of the settlement."

In response to the above ruling, National Union's counsel admitted that Ochs's theories were extremely weak, stating that "on a scale of 1 to 100, [Ochs's theories] were about a three." The trial court then further stated as follows: "Had this been done in the normal course, went to trial, an answer would have been made, percentage of fault would

7

have been determined, . . . and your clients would have resolved it there at the trial. You didn't. Sorry. But that's kind of the end of it as far as I'm concerned. [¶] The fact that it's now taken three, four, five years to resolve the issue is neither here nor there, quite frankly. I don't think anybody should benefit by that, and if anybody's charged with any problems as a result, I think they go to the party who brought this action."

In its closing trial brief, National Union asserted that the indemnity provision of the Supplier Agreement required Yokohama to indemnify Costco for the latter's negligence. National Union also maintained that, because Yokohama refused Costco's tender of its defense in the Daer case, National Union was entitled to a presumption that the tire was defective, and was therefore entitled to recover all of its settlement payments from Yokohama.

On October 26, 2011, the trial court issued a Statement of Decision regarding the interpretation of the Supplier Agreement and the burden of proof issues. The court determined that Yokohama's indemnity obligation was only for liability for tire defects and it did not extend to Costco's negligence. The court also concluded that, under controlling law, National Union had the burden of proving Yokohama's "actual liability" to Daer and the allocation of liability as between the concurrent causes of Daer's harm.

On December 20, 2011, National Union moved for reconsideration of the trial court's September ruling excluding Cottles's new defect theories. The grounds for this motion were that Daer's federal court experts, who had not been designated as trial experts in either the Daer action or this case, had shared some of Cottles's excluded theories. The trial court denied the motion, reiterating its belief that tire defect theories not asserted by Daer were irrelevant to the claim to recoup the settlement payment because such theories could not have formed the basis for that settlement.

Having secured the ruling that Cottles could not offer tire defect theories other than those held by Ochs, and based on Cottles's testimony that in his expert opinion all eight of the defects which he identified acted together to cause the tire to fail, Yokohama moved in limine to exclude Cottles from testifying. National Union argued that Daer's earlier experts had offered the excluded defect theories upon which Cottles relied, and

were therefore present in the lawsuit at the time of the settlement.  The court granted Yokohama's motion in limine.

In its opening statement, National Union conceded that Cottles could not testify that the two defects identified by Ochs caused the tire to fail; thus it failed to identify any evidence of tire defect.  Yokohama moved for nonsuit because tire defect liability was an element of the indemnity claim.  The trial court granted nonsuit on the fourth cause of action for contractual indemnity under the Supplier Agreement.  The court rejected National Union's effort to present additional evidence of a tire defect, concluding that its ruling on the nonsuit was law of the case, and that National Union could not relitigate the issue.

The court entered judgment against National Union on July 26, 2012.  National Union moved for a new trial, which motion was denied on October 5, 2012.  National Union timely filed its Notice of Appeal on November 1, 2012.

## CONTENTIONS

In this appeal, National Union assigns four errors to the trial court which it contends require reversal of the judgment:  (1) the exclusion of the testimony of its tire expert, Troy Cottles; (2) the erroneous interpretation and application of the indemnity provisions of the Supplier Agreement; (3) the granting of respondents' motions for nonsuit and summary adjudication, which were based on the court's erroneous rulings on the burden of proof, the exclusion of Cottles's testimony and the failure to address Tokio Marine's duty to defend; and (4) the sustaining of Tokio Marine's demurrer to National Union's bad faith claim.  We consider each contention in turn.

## DISCUSSION

1. *Exclusion of testimony of National Union's tire expert*

National Union contends that the trial court erred in granting Yokohama's motions in limine disallowing Cottles to opine on tire defects which Daer's expert, Ochs, did not share.  "Broadly speaking, an appellate court reviews any ruling by a trial court as to the

9

admissibility of evidence for abuse of discretion." (*People v. Alvarez* (1996) 14 Cal.4th 155, 201.) Here, however, the court's ruling was in fact a legal conclusion that, in prosecuting its indemnification claims, National Union could not rely on evidence acquired post-settlement to prove Yokohama's liability for a product defect. Consequently, it is a question of law subject to de novo review. (See *Children's Hospital Central California v. Blue Cross of California* (2014) 226 Cal.App.4th 1260, 1277.)

Yokohama objected to Cottles's testimony, arguing to the trial court that only "tire defect theories" asserted by Daer's expert were relevant to National Union's indemnity claims, "because only those defect claims could have formed the basis for the parties' evaluations of liability and settlement."[6] However, this is not a claim of lack of relevance so much as an assertion that an indemnitee which settles the underlying plaintiff's personal injury claim is limited to offering the evidence which the plaintiff was prepared to present in prosecution of the third-party claim. Yokohama provides no authority in support of this assertion.

The question thus presented is whether an indemnitee which settles a third party claim can present evidence acquired post-settlement, or instead is limited to the underlying plaintiff's evidence of liability. The trial court ruled that, in order to establish the right to indemnity from Yokohama, National Union was required to prove that Costco was actually liable to Daer for a defect in the tire. Cottles testified in deposition that, in his expert opinion, the tire contained eight defects which together caused the tire to fail. Yokohama did not challenge Cottles's qualifications as an expert, but simply objected to the testimony because Cottles identified different defects in the tire than had Daer's expert. It cannot be convincingly argued that Cottles's tire defect testimony was not

---

[6] Yokohama's argument suggests that Costco was required to marshal its tire defect evidence and litigate the issue as part of the Daer action. However, there is no requirement that an indemnitee file a cross-complaint against its indemnitor in the third-party action. (See, e.g., *American Bankers Ins. Co. v. Avco-Lycoming Division* (1979) 97 Cal.App.3d 732, 736; *Burrell v. Southern Pacific Co.* (1970) 13 Ariz.App. 107, 111 [474 P.2d 466, 470] ["(T)he fact that co-defendant could have filed a cross-claim does not bar by res judicata a later action against the co-defendant on a cross-claim action not filed"].)

relevant to a disputed issue in the case, that is, whether the tire contained a defect. We conclude that the trial court erred in limiting Cottles's testimony to opinions he shared with Ochs.

Yokohama contends that, even if Cottles's opinion was erroneously excluded, National Union has failed to establish that the error was prejudicial. Yokohama asserts that National Union "must affirmatively show that it would have prevailed at trial had its expert's opinions not been limited to Ochs'[s] theories," and having failed to do so, cannot prevail on appeal. We disagree.

"The standard for deciding whether the erroneous refusal to admit evidence constitutes grounds for reversal is well-settled. A case will be reversed for trial error only when the error results in a 'miscarriage of justice.' [Citation.] Our high court has held such a miscarriage of justice occurs when, after an examination of the entire record the appellate court 'is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.'" (*Loftleidir Icelandic Airlines, Inc. v. McDonnell Douglas Corp.* (1984) 158 Cal.App.3d 83, 95-96, citing *People v. Watson* (1956) 46 Cal.2d 818, 836; see also Code Civ. Proc., § 475.)" "However, when a trial court erroneously denies all evidence relating to a claim, or essential expert testimony without which a claim cannot be proven, the error is reversible per se because it deprives the party offering the evidence of a fair hearing and of the opportunity to show actual prejudice. [Citations.]" (*Gordon v. Nissan Motor Co. Ltd.* (2009) 170 Cal.App.4th 1103, 1114; see also, *Easterby v. Clark* (2009) 171 Cal.App.4th 772, 783.)

Here, the error was undoubtedly prejudicial. Cottles was National Union's sole witness on tire defects. Both parties agreed that, based on the trial court's ruling, National Union could not prove that a defect in the tire caused it to fail, a requisite element of its contractual indemnity claim. Had the trial court permitted Cottles to testify to all of the defects he had identified in the tire, it is reasonably probable that the trial court would not have granted Yokohama's motion for nonsuit, a result more favorable than the one National Union obtained at trial.

11

Yokohama essentially argues that fairness requires that, in asserting Costco's indemnity claim, National Union's ability to prove a tire defect should be limited to the state of the evidence at the time of the Daer settlement. It asserts that National Union "settled the Daer case due to Costco's obvious and significant tire store negligence liability, . . . [National Union] is not seeking indemnity of a settled case, but instead attempting to gain a windfall by recovering for an entirely new case." But as National Union argues, if we were to accept Yokohama's position, a business sued for both products liability and negligence would be required to marshal evidence of its own liability to the injured plaintiff or risk impairing its indemnity rights vis-à-vis the product manufacturer. This would not only place an unfair burden on the litigant, but could very well undermine the public policy in favor of settlement. We note as well that if the tire in fact contained a defect which caused it to fail, then adoption of Yokohama's argument could result in a windfall to Yokohama. In any event, if Yokohama is correct in its assertion that the tire was not defective and Costco's settlement reflects its significant tire store negligence liability, then Yokohama will prevail at trial. National Union is nevertheless entitled to present relevant evidence in support of its claim, including Cottles's evidence of a tire defect.

2. *Interpretation of indemnity provision of Supplier Agreement*

In order to avoid the deleterious effects of the trial court's ruling on the admissibility of Cottles's expert testimony, National Union turned to an alternative method of proving its case without having to present evidence of a tire defect: it contended Yokohama had a duty to defend all claims brought against Costco, including those based on Costco's negligence, and that because Yokohama refused Costco's tender of defense of the Daer action, Yokohama was liable under Washington law for any reasonable settlement made in good faith. (*Northern Pacific Ry. Co. v. Nat.'l Cylinder Gas Div., Etc.* (1970) 2 Wash.App. 338, 344 [467 P.2d 884, 889]; *Prociw v. Baugh Const. Co.* (1973) 9 Wash.App. 750, 756 [515 P.2d 518, 522].) The only facts at issue would then be whether Costco's settlement with Daer was reasonable and was entered

12

into in good faith. Alternatively, National Union argued that since the action was filed in California, it was entitled to a presumption, as set forth in *Linear Technology Corp. v. Applied Materials, Inc.* (2007) 152 Cal.App.4th 115 (*Linear Technology*), that the indemnitee's settlement of the third-party action is "'presumptive evidence of liability of the indemnitee and of the amount of liability but it may be overcome by proof from the indemnitor that the settlement was unreasonable.'" (*Id*. at p. 130, quoting *Peter Culley & Associates v. Superior Court* (1992) 10 Cal.App.4th 1484, 1497.) This would have had the effect of shifting the burden of proof on the element of "actual liability" from National Union to Yokohama, which would have prevented Yokohama from obtaining judgment by nonsuit.

National Union complains on appeal that the "trial court improperly failed to rule on the effect of Yokohama's refusal to defend." However, since National Union sought a ruling on the scope of the indemnity agreement only because the trial court excluded Cottles's testimony, and we reverse that ruling with the result that National Union will have the opportunity to present all relevant tire defect evidence, we do not believe that the trial court's failure address the issue of Yokohama's duty to defend prejudiced National Union. We therefore do not discuss this contention.

3. *Grant of respondents' motions for nonsuit and summary adjudication*

Based on the trial court's rulings on the exclusion of Cottles's testimony, the court granted Yokohama nonsuit on the fourth cause of action for breach of its indemnity obligations, and summary adjudication of the sixth cause action for breach of its obligation to procure insurance coverage for liability arising from tire defects. The court also granted summary adjudication to Tokio Marine on the first, second and third causes of action for equitable subrogation, indemnity and contribution based on the Insurance Policy. A judgment against National Union was entered as to all of the foregoing causes of action. Because the trial court erroneously excluded Cottles's expert testimony, and judgment was entered in favor of Yokohama and Tokio Marine based on that erroneous ruling, we reverse the judgment.

13

4. *Dismissal of National Union's bad faith cause of action*

National Union pled a cause of action against Tokio Marine for equitable subrogation of Costco's bad faith claim, based on its status as an additional insured under the Insurance Policy by reason of the vendor endorsement.  National Union alleged that Tokio Marine breached the duty of good faith and fair dealing it owed to Costco by, among other things, refusing Costco's tenders of defense and indemnity; failing to conduct its own investigation of Daer's claims against Costco; and "failing and refusing to give Costco's interests as much consideration as Yokohama's and/or their own."  National Union sought to recover approximately $187,000 in settlement monies Costco paid towards the Daer settlement, approximately $4.3 million that National Union paid to settle the Daer case, and National Union's fees incurred in this action to pursue benefits under *Brandt v. Superior Court* (1985) 37 Cal.3d 813.

The trial court sustained Tokio Marine's demurrer, agreeing that National Union did not present any "allegation that Costco suffered identifiable damages due to the bad faith conduct upon which [National Union] has paid money and for which equitable subrogation is now sought."  National Union challenges this ruling.

"In determining whether plaintiffs properly stated a claim for relief, our standard of review is clear:  '"We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  [Citation.]  We also consider matters which may be judicially noticed." [Citation.]  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.  [Citation.]  And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff.'  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; see also *McCall v. PacifiCare of Cal., Inc.* (2001) 25

14

Cal.4th 412, 415 [noting that our review is de novo].)" (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.)

"An insurer's cause of action for equitable subrogation contains six elements: (1) the insured has suffered a loss for which the party to be charged is liable; (2) the insurer has compensated for the loss; (3) the insured has existing, assignable causes of action against the party to be charged, which the insured could have pursued had the insurer not compensated the loss; (4) the insurer has suffered damages caused by the act or omission which triggers the liability of the party to be charged; (5) justice requires that the loss be shifted entirely from the insurer to the party to be charged; and (6) the insurer's damages are in a stated sum, which is usually the amount paid to the insured, assuming the payment was not voluntary and was reasonable." (*Gulf Ins. Co. v. TIG Ins. Co.* (2001) 86 Cal.App.4th 422, 432 (*Gulf*).) As the court in *Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1994) 21 Cal.App.4th 1586, 1596, explained: "In the insurance context, the doctrine permits the paying insurer to be placed in the shoes of the insured and to pursue recovery from third parties responsible to the insured for the loss for which the insurer was liable and paid. [Citation.]"

As this court noted in *Gulf*, *supra*, 86 Cal.App.4th 422, bad faith claims typically arise when the insured alleges that his or her insurer unreasonably refused to settle within policy limits, resulting in a judgment against the insured in excess of the policy limits. (*Id.* at pp. 432-433.) In this situation, the insured's damages resulting from the bad faith conduct are clear: the amount of the judgment in excess of the policy limits. So too, an excess insurer may "recover against the primary insurer when, for example, the latter wrongfully refuses to accept a settlement offer within primary policy limits, where, prior to trial, there was a substantial likelihood of recovery in excess of those limits." (*Diamond Heights Homeowners Assn. v. National American Ins. Co.* (1991) 227 Cal.App.3d 563, 579.)

Here, the trial court ruled that the elements of a bad faith claim were not pled because there were no allegations that Costco suffered harm as a result of Tokio Marine's bad faith conduct for which National Union paid. Specifically, the settlement payment

15

made by National Union was not a loss suffered by Costco, and Costco's payments toward the settlement were not reimbursed by National Union. Thus, neither of the payments claimed in this cause of action meet the specific requirements for pleading a bad faith subrogation claim. Nor were the fees expended by National Union in pursuit of a bad faith claim incurred by Costco. Accordingly, the demurrer to National Union's bad faith claim was properly sustained without leave to amend.

DISPOSITION

The trial court's order sustaining Tokio Marine's demurrer to National Union's bad faith claim is affirmed. The remainder of the judgment is reversed. National Union is to recover its costs of appeal.

CERTIFIED FOR PUBLICATION


GOODMAN, J.*


We concur:



TURNER, P.J.



KRIEGLER, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.